WILLIAM E. HENKEL v. PIONEER SAVINGS & LOAN COMPANY.[1]

May 6, 1895.

Nos. 9251—(85).

**Building and Loan Associations—Forfeiture of Shares.**

The defendant is a corporation organized in December, 1885, under the provisions of G. S. 1878, c. 34, title 2 (G. S. 1894, §§ 2794–2912), to carry on, among other enterprises, the business of a building and loan association. *Held*, construing sections 3412, 3413, G. S. 1894, that it cannot, by virtue of its by-laws or contracts with its members, forfeit absolutely to its own use the shares of a member who defaults in the payment of instalments and dues on his shares, but it must sell such shares, and, after indemnifying itself out of the proceeds of such sale, pay the balance thereof, if any, to such shareholder.

**Limitation of Action.**

*Held*, that it does not clearly appear on the face of the complaint in the case that plaintiff's alleged cause of action is barred.

Appeal by plaintiff from an order of the district court for Hennepin county, Hicks, J., sustaining a demurrer to the complaint. The provision of the certificate of shares referred to in the opinion provided that any action against defendant should be brought on or before 6 months after filing proofs. The other facts are stated in the opinion. Reversed.

*Millard F. Bowen*, for appellant.

*George D. Emery*, for respondent.

START, C. J. This is an appeal by the plaintiff from an order sustaining a demurrer to his complaint on the ground that it does not state facts sufficient to constitute a cause of action.

The defendant is a corporation organized December, 1885, under and by virtue of the provisions of G. S. 1878, c. 34, title 2 (G. S. 1894, §§ 2794–2912), to carry on, among other enterprises, the business of a building and loan association. The plaintiff on July 1, 1889, became a shareholder of the defendant, and entitled to 10 shares therein, of $100 each, subject to the payment of monthly,

[1] Reported in 63 N. W. 243.

quarterly, and withdrawal instalments and other dues. The by-laws of the defendant and the certificate of shares issued by it to, and accepted by, the plaintiff, expressly provide, in effect, that every monthly instalment must be paid on or before the last Saturday in each month, and that upon the default of any shareholder to pay any instalments or dues as they mature, his membership shall terminate, and his shares, and all sums paid thereon, be forfeited to the defendant, and become absolutely its property; but that he can be reinstated within 90 days after default, by consent of defendant's board of managers, and paying all arrears, with interest and a fine. The plaintiff paid all instalments and dues on his shares up to February 1, 1892, amounting in all to the sum of $309.50, when he defaulted, and the defendant, June 29, 1892, lapsed and forfeited his certificate—that is, forfeited his shares and the amount paid thereon—absolutely to its own use, without a sale thereof, and without notice to the plaintiff other than as contained in his certificate. The plaintiff applied to the defendant for a reinstatement of his shares in November, and again in December, 1892, offering each time to pay all sums for which he was in default. The defendant refused to make such a reinstatement upon any terms whatever. Thereupon the plaintiff brought this action, alleging in his complaint substantially the foregoing facts.

If the by-laws of the defendant and the certificate, providing for an absolute forfeiture without a sale of a shareholder's shares on default in his payments, are valid, the complaint does not state a cause of action, for, if such is the case, the defendant has simply availed itself of a legal right in confiscating to its own use the plaintiff's shares. If the forfeiture was authorized by law, a court of equity will not set it aside. But, if the by-laws and certificate in question are void because they contravene the letter or spirit of the statute, the complaint does state a cause of action. If the defendant was by law prohibited from making any by-law so forfeiting the shares of its members without a sale, it could not make the forfeiture valid by inserting such a provision in its certificate of shares issued to its members, for in such a case the supposed contract would be contrary to public policy as declared by law and void. We have, then, the question, was the defendant authorized to make a by-law forfeiting absolutely to its own use, with-

out any sale thereof, the shares of members in default by not paying their instalments and dues as they matured? The answer to this question depends upon the construction to be given to G. S. 1894, §§ 3412, 3413.

The first section provides that the corporation, where no other provision is specially made (that is, by law), may, by their by-laws, determine the mode of selling shares for the nonpayment of assessments. This is an express recognition of the necessity of selling such shares, for the forfeiture of stock by the act of a corporation for the nonpayment of assessments is not known to the common law, and it has no inherent power to do so. Minnehaha D. P. Ass'n v. Legg, 50 Minn. 333, 52 N. W. 898; Matter of Long Island R. Co., 19 Wend. 37. This section confers the right upon corporations to determine by their by-laws the mode only of selling such shares, not to forfeit them absolutely to their own use; for the subject-matter of the grant of power is the right to determine the mode of selling the shares, where no other provision is specially made for selling them. Section 3413 reads as follows: "If any subscriber for the stock of any corporation neglects to pay any instalment of his subscription when lawfully required by the directors or other managing officer of the corporation, he shall forfeit such stock, and the same may be sold in such manner as the directors in their by-laws prescribe, and after paying the amount of the instalment due or called for, and the expenses of sale, the balance of the proceeds of such sale shall be paid to such subscriber. An action may also be maintained against such subscriber upon his subscription." The word "may" in this statute evidently means "shall," for "may" means "shall" where public interests or the rights of third parties require it. For example, a statute provided that "a tax certificate may be substantially in the following form," and it was held that "may" meant "shall." Gilfillan v. Hobart, 35 Minn. 185, 28 N. W. 222. This section declares and authorizes a forfeiture of such shares, but regulates the mode of exercising the power upon the basis of strict equity between the parties. It recognizes the necessity for the prompt payment of all dues by members of the corporation, and that it would be inequitable to permit them to default in their payments, and speculate without risk to themselves, upon the chances of the success

or failure of the enterprise, and, if it proved successful, pay their arrears, otherwise not; and it secures the former, and defeats the latter, by forfeiture at once of the shares, whereby the shareholder ceases to be a member of the corporation. But it also recognizes the equity of the shareholder after such forfeiture, and the injustice of permitting the corporation to profit by his misfortune. It therefore provides a speedy procedure, whereby his equity may be extinguished by a sale of the forfeited shares by the corporation, in such manner as may be determined by its by-laws. It leaves the time and manner of the sale to the discretion of the corporation, as determined in its by-laws, upon the implied condition, however, that reasonable notice of the time and place of sale must be given; but it is not discretionary whether it will sell or forfeit the shares absolutely to its own use, for it must sell them, if it desires to extinguish the holder's equities therein. From the proceeds of the sale the corporation completely indemnifies itself for all unpaid dues and the expenses of the sale. The balance, if any, must be paid to the holder. Nothing could be fairer or more equitable than this rule of the statute, and to substitute for it the rule of absolute forfeiture without a sale of the shares would simply enable the strong shareholders to despoil with impunity the weak ones, who have been induced by the promise of large profits upon their investments to subscribe for more shares than they can carry, or who by sickness, loss of employment, or other misfortune find themselves unable to pay their dues as they mature. The distinction between the shares of a building and loan association and the premium or dues to be paid for life insurance is too obvious to admit of discussion, and the life insurance cases cited by counsel are not in point.

When sections 3412, 3413, are read together, and construed with reference to the common law as to the forfeiture of stock by a corporation, and the public and private interests they were manifestly intended to conserve, it is clear, and we so hold, that they forbid the defendant, or any other corporation, from forfeiting absolutely the shares of stock of its members to its own use for non-payment of dues, but it must sell such forfeited shares, and out of the proceeds of the sale indemnify itself, and return the surplus, if any, to the delinquent holder. This is the public policy of the

state as declared, not only by this statute, but also by Laws 1889, c. 236, §§ 27, 28 (see, also, G. S. 1894, §§ 2881, 2882), which specifically define the mode of selling forfeited shares. It it be conceded that the express provisions of these sections as to withdrawals and forfeitures do not apply to the defendant, still they do not recognize the right of the defendant to forfeit the shares of its members without a sale. It simply relieves it from following the express provisions of this statute as to the manner of selling forfeited stock, leaving to it the right, by its by-laws, to determine the manner of selling such shares, as provided in sections 3412, 3413. The by-law of the defendant in question, and the contract in the certificate of shares providing for the absolute forfeiture of shares for nonpayment of dues without providing for a sale, are contrary to law, and therefore void.

We are not called upon to discuss or decide the question of the validity of the provisions of the certificate of shares limiting the time within which an action may be brought against the defendant; for, assuming the limitation to be valid, it does not so clearly appear from the face of the complaint that this action is barred as to bring it within the rule of Trebby v. Simmons, 38 Minn. 508, 38 N. W. 693.

Order reversed.

---

On Application for Reargument.

The following opinion was filed May 27, 1895.

PER CURIAM. The only claim made by respondent in this case, either in the brief of counsel or on the oral argument, was that under its by-laws, the certificate of shares issued by it to the appellant, and the contract modifying the terms thereof, it had the right to forfeit the shares of the appellant absolutely without a sale. It insisted that Laws 1889, c. 236, expressly exempted it from the provisions thereof relating to withdrawals and forfeitures, and left the matter to be adjusted by contract between it and its members. The court decided the questions presented.

Now the respondent claims for the first time that Laws 1891, c. 131, § 27 (G. S. 1894, § 2881), providing for a strict foreclosure of the equities of defaulting shareholders, is applicable to this case, and asks the court to grant a reargument because the court failed to anticipate and pass upon the merits of this departure from its original claim.    If the respondent has complied with this statute whereby the rights and equities of appellant in his shares have become extinguished, it can raise the question by answer.    How, if at all, this statute affects the relative rights of the respondent and its shareholders, is a question too important to be decided without argument, and must be deemed to be an open one until passed upon by the court in a case involving a decision of the question.

Application for a reargument denied.