ASA B. BARTON v. PIONEER SAVINGS & LOAN COMPANY.[1]

June 23, 1897.

Nos. 10,541—(176).

Building Association—Forfeiture of Shares—Acquiescence.

Certain members holding shares in a mutual building association defaulted in the payment of monthly instalments and dues in January, 1891. As early as July 1 the association, by resolution of the board of directors, absolutely forfeited these shares and the money paid thereon to its own use, without a sale thereof, and without notice, except as notice was contained in the members' certificates. And such money, with other earnings of the association, was distributed in good faith to all shares in good standing in accordance with the by-laws, and under the direction

[1] Reported in 71 N. W. 906.

of the public examiner. The defaulting members, residents of this state, made no application for reinstatement, and took no steps whatever to protect their interests or assert their rights, except as might be inferred from the fact that in December, 1895, they assigned their certificates and all rights and interests therein to this plaintiff, who, in March, 1896, brought an action as for conversion, and to recover the value of the certificates. Meantime, in the years 1891, 1892 and 1893, the association, in accordance with the scheme of the organization and the by-laws, paid off all shares of the class of those assigned to the plaintiff, and in making payment included the sums paid by the defaulting members, and distributed as before stated. *Held*, that the defaulting members should have dissented, and should have asserted their rights within a reasonable time, and, not having done this, they will be presumed to have assented to the ultra vires and unlawful act of the directors in forfeiting their shares, and in appropriating the sums paid in for the benefit of members in good standing.

Appeal by defendant from an order of the district court for Hennepin county, Jamison, J., denying its motion for a new trial. Reversed.

*Geo. D. Emery* and *Keith, Evans, Thompson & Fairchild*, for appellant.

*Millard F. Bowen*, for respondent.

COLLINS, J.

Action by a party holding assignments of all the "right, title, and interest in law or equity" in and to certain certificates of stock held by defaulting shareholders in defendant corporation, a mutual building association organized under the provisions of G. S. 1894, § 2794, to recover damages claimed on account of an alleged conversion of stock by the association.

The assignors subscribed for and received ten certificates in July, 1887. They paid their dues up to and including the month of December, 1890. They made default in January, 1891, and remained in default thereafter. The shares were declared forfeited in June, and the alleged conversion took place as early as July 1, 1891, at which time all payments made by the holders were declared forfeited, were converted to the use of the corporation, and, with other earnings, were distributed to all shares in good standing, and reported as so distributed to the public examiner of the state, as re-

quired by law. No application for reinstatement was ever made, nor any claim for the amount alleged to have been converted, prior to the commencement of this action, in March, 1896. The assignments to the plaintiff bear date December 31, 1895. No notice of forfeiture was given to the defaulting shareholders; the shares were not offered for sale, nor were they sold; and no proceedings were had except that the board of directors adopted a resolution declaring the forfeiture, and then proceeded to distribute to the other shares the sum paid in, less an agreed percentage set apart for expenses. Except upon the single question to be considered hereinafter, the case is controlled by that of Henkel v. Pioneer, 61 Minn. 35, 63 N. W. 243. The court below so held, and, upon the question referred to, it held against defendant, ordering judgment in plaintiff's favor. The appeal is from an order denying defendant's motion for a new trial.

No attempt was made in the complaint or upon the trial to excuse or justify the default in payment of dues. The failure to pay appears to have been voluntary, with full knowledge on the part of the shareholders of the plan upon which the association was organized, their own contract with respect to a prompt payment of dues, entered into when they became members, and the method of forfeiture prescribed in the by-laws. The failure to pay was in total disregard of their obligations as such members. The by-laws, made a part of their contracts, provided for an absolute forfeiture to the association of their shares upon default in payment. They must be presumed to have known that the board of directors would promptly declare the forfeiture, and equally as promptly distribute the sums paid in to the remaining shares, and it must also be presumed that they knew that under the statutory provisions construed in the Henkel case this could not be done, although provided for in the by-laws and in the contracts with members. They must be presumed to have known that the shares in the association began to mature and become payable June 1, 1891, soon after their default, and that, in accordance with the by-laws, series of shares would mature monthly, would be paid, surrendered, and canceled; all of the earnings and profits, including moneys forfeited by defaulting members, less the expense, percentage, and amóunts lost, being taken into consideration by the association when estimating its

earnings, and when distributing the same among members whose shares were maturing monthly, commencing June 1, 1891. The fact was that in the years 1891, 1892, and 1893, in accordance with the scheme of organization for the maturing of stock in monthly series, shares of the same class as those assigned to plaintiff to the amount and value of over one million dollars became payable, which included the proportion the shares were entitled to from all forfeitures, said amount having been paid out to members as their shares matured. These several payments included, of course, the proportionate amounts received by means of the resolution and action in respect to the sums paid in by the defaulting shareholders in question. It also appears that this method of estimating earnings and making distribution of amounts forfeited was in accordance with the instructions received from the public examiner.

In short, it is evident that, in accordance with the provisions of the by-laws and the custom of the association prior to the decision in the Henkel case, the amount paid in by these shareholders, and which plaintiff seeks to recover, was long before the commencement of this action paid out to shareholders in the same class, and that these defaulting shareholders knew, or are presumed to have known, of this custom, as well as what actually transpired. With actual or presumed knowledge of the acts of the board of directors and the association, these shareholders, residing within this state, remained silent for more than four years. They have never objected in any manner except as might be inferred from the assignments in December, 1895. With power to enforce their rights under the law, and to compel an observance of the statutory requirements in case of default and forfeiture, these stockholders apparently acquiesced in what was being done in good faith for over four years. They failed to protest or to assert their rights, but finally, by means of the assignments, put it in the power of the plaintiff to institute an action nominally against the association, but really against the present members, who have acquired their interests upon the faith of the acquiescence, and out of whom the amount of plaintiff's judgment, should he recover, will ultimately come.

Under such circumstances we are of the opinion that the doctrine of equitable estoppel should be applied. In the case of Pinkus v. Minneapolis, 65 Minn. 40, 67 N. W. 643, an action in which a stock-

holder in a manufacturing corporation undertook to recover from it and from its directors the value of his proportionate share of property of the corporation exchanged—ultra vires and unlawfully, as he claimed—for stock in another corporation, this doctrine was approved and applied. It was said, at page 47:

"The equitable principles applicable to the facts of this case are too well settled to justify any extended discussion of them. Courts differ as to the precise designation of the ground upon which they deny relief to a dissenting stockholder, under the circumstances of this case. Some call it 'ratification'; others 'laches'; and still others an 'equitable estoppel.' If required to name the ground on which any relief to the plaintiff must be denied in this case, we should designate it a 'ratification by equitable estoppel,' but the name is immaterial. Turner v. Kennedy, 57 Minn. 104, 58 N. W. 823. It is inequitable for a stockholder, knowing that an act done by the directors and a majority of the stockholders, in good faith, for the benefit of the corporation, is in fact unauthorized, to apparently acquiesce by his silence, but secretly reserve an option to repudiate the act in case of loss, or to enjoy its benefits if it proves profitable. Fairness requires in such cases that dissenting shareholders should act promptly, and make known their objections without unreasonable delay. If they fail to do so, their assent to the unauthorized act will be presumed, and they will be estopped from denying that they have assented to or ratified the act."

A number of text-books were cited in support of this statement, and it cannot be doubted that it is well-settled law. The simple questions here are whether the doctrine is applicable in an action founded upon the rights of parties who have ceased to be stockholders in a corporation, and, if so, is this, upon the facts, a proper case for such application?

Both questions must be answered in the affirmative. Although the defaulting members had ceased to be stockholders, they still held a qualified interest in their share certificates and in the association,—an interest which it was the duty of the board of directors to protect by a strict compliance with the law respecting forfeitures. To the extent of this interest it was the duty of the directors to protect those who had ceased to be members quite as much as it was their duty to protect others who remained members. And to the extent of their interest the directors continued to be the representatives of defaulting members as fully as they represented members in good standing. Having an interest to be represented and taken

care of, members who dropped out of the association would be bound, in so far as that interest was concerned, in the same manner and to the same extent, as would those who remained, by the acts of their official representatives. If an act ultra vires or illegal was performed by the directors which affected the former and their rights, it could in no way be distinguished from a like act so performed and affecting actual shareholders. The plaintiff is simply attempting to enforce a right which accrued to the shareholders as such when active membership ceased.

While the cases are not numerous, the doctrine of equitable estoppel through laches and acquiescence has been applied in actions brought to avoid illegal forfeitures of shares. Prendergast v. Turton, 1 Younge & C. Ch. 98, and cases cited in 23 Am. & Eng. Enc. Law, 825, notes 8, 9. On principle, such actions cannot be distinguished from that at bar.

We need not again allude specially to the facts upon which is predicated our conclusion that this is a very proper case for the application of the doctrine that fairness with the association and its members required of the defaulting shareholders that they should have protected their interests promptly, and should have asserted their rights without unreasonable delay. Not having done so, their assent to the unlawful appropriation of the amounts they paid in must be presumed, and they and their assignee are estopped from denying that they assented to or ratified such appropriation.

The order appealed from is reversed, and a new trial granted.