HENRY TURNER *vs.* WILLIAM C. KENNEDY.

Submitted on briefs April 11, 1894.    Reversed April 20, 1894.

No. 8816.

**Fixtures, as between landlord and tenant.**

If the owner of a house built by license on the land of another fails to remove it within a reasonable time after being ejected from the land by the owner thereof, such house becomes a part of the realty, and ceases to be the property of such licensee.

**Agency, ratification by principal of unauthorized act of agent.**

Ratification of the acts of an unauthorized agent, by neglect for an unreasonable length of time to repudiate them, is an application of the doctrine of equitable estoppel, which may be invoked against the party guilty of such laches, but not in his favor.

Appeal by defendant, William C. Kennedy, from an order of the District Court of Marshall County, *Frank Ives*, J., made April 21, 1893, granting the motion of plaintiff, Henry Turner, for a new trial.

In the fall of 1889, plaintiff built a portable frame dwelling house sixteen feet long by fourteen feet wide on the land of a railroad company with its license. The house was built on skids or timbers hewed in the shape of sleigh runners resting on boards lying on the ground. It was worth $80 or $90. The railroad company brought ejectment and put plaintiff off the land in April, 1891, and sold the land to Elizabeth Kennedy, defendant's wife. Plaintiff left the house in the care of his brother Thomas. He without authority soon after gave defendant possession of the house and he moved into it and built an addition to it. On January 6, 1892, plaintiff demanded the house and was prepared to

remove it. Being refused he brought replevin for it in Justice's Court and had judgment. Defendant appealed to the District Court where the issues were retried and defendant had a verdict by direction of *Hon. Ira B. Mills*, J. Plaintiff made a motion before *Hon. Frank Ives*, successor of Judge Mills, and obtained an order for a new trial. From that order defendant appeals.

*William Watts*, for appellant.

On the facts the house became a part of the realty. *Little* v. *Willford*, 31 Minn. 173; *Howard* v. *Fessenden*, 14 Allen, 124; *McLaughlin* v. *Nash*, 14 Allen, 136; *Bonney* v. *Foss*, 62 Me. 251; *Washburn* v. *Sproat*, 16 Mass. 449; *Huebschmann* v. *McHenry*, 29 Wis. 655.

Plaintiff by laches in not removing the house prior to the time he demanded it lost all right to it. *Erickson* v. *Jones*, 37 Minn. 459; *Smith* v. *Park*, 31 Minn. 70.

*William C. Brown* and *H. W. Brown*, for respondent.

The house was personal property and could be removed. *Little* v. *Willford*, 31 Minn. 173; *Ingalls* v. *St. Paul, M. & M. Ry. Co.*, 39 Minn. 479.

The railway company in 1887 gave the Turner Brothers a license to enter on the land and build. There is nothing in the evidence to show that this license was ever revoked until April 15, 1891, at which time it was impliedly revoked by the ejecting of the Turner Brothers from the land. After that the plaintiff had a reasonable time in which to remove the house. *Ingalls* v. *St. Paul, M. & M. Ry. Co.*, 39 Minn. 479.

But on the same day that the license was thus revoked the railway company turned the possession and control of the land over to defendant and on the same day defendant asked plaintiff's brother, Thomas Turner, for the use of the house in controversy until after breaking season, and stated that he would leave after that time and plaintiff could then have his house back again. With this understanding Thomas let defendant have the house, and defendant and his wife continued to occupy it until it was taken under the writ in this action. These acts on the part of

defendant constitute a new license to keep the house on the land, and this new license continued right up to the time the house was demanded.

When the evidence closed the case should have been submitted to the jury. There was evidence to support a verdict for plaintiff and the court erred in directing a verdict for the defendant.

CANTY, J. In 1887 the plaintiff and his brothers entered into negotiations with the St. Paul, Minneapolis & Manitoba Railway Company, by which they got leave to build on a certain eighty acres of land which was claimed by it as indemnity land, but for which it had at that time no patent. Plaintiff built the house in question, and he and his brothers made other improvements on the land. After the railway company procured its patent and had some further negotiations with the Turners for the sale of the land to them, it commenced an action of ejectment against them, procured judgment, and executed a writ of ejectment on the 15th of April, 1891, by which it got possession of the land. A few days before this, the railway company had sold the land to Elizabeth Kennedy, the wife of the defendant, and, upon obtaining possession of the land, it immediately turned the possession over to her. When the writ was executed, the house in question was vacant, and there was no one present upon the land except Thomas F. Turner, plaintiff's brother, who on the same day made a lease with defendant, whereby defendant in his own name leased the land to the Turners, reserving to himself the use of this house, and Thomas F. Turner signed the names of himself, plaintiff, and his other brother to the lease. Kennedy immediately went into possession of the house, and Thomas Turner of the rest of the premises.

The house was a frame structure, built on skids turned up at the ends like sleigh runners, which rested on boards on the ground, so that it could be readily hauled away.

The defendant took possession of it, built an addition fourteen by sixteen feet to it, and lived in it until January 6, 1892, when plaintiff demanded possession of it, and within two or three days afterwards commenced replevin proceedings for it in justice's court. After a trial, the case was appealed to the District Court,

and at the close of the evidence on the trial there a verdict was ordered for the defendant. Plaintiff moved for a new trial before the successor of the judge who tried the case, on the grounds that the verdict was not justified by the evidence, and for errors of law occurring on the trial. The motion was granted, and defendant appeals.

The complaint in replevin alleges that defendant wrongfully took the house on the 15th day of April, 1891, and plaintiff made no claim to it for nearly nine months afterwards, and he makes no attempt to excuse his laches.

It is true that there is evidence to the effect that, at the time the writ of ejectment was executed, Thomas Turner told defendant that this house belonged to plaintiff, but that defendant could use it during the breaking season, and then leave it, which defendant agreed to do, and that Thomas informed plaintiff of this within a week afterwards. But plaintiff and Thomas both testify that Thomas had no authority to rent, or in any way dispose of, this house, or do anything at all with it except to take care of it, so that it would not be burned down. There is no evidence that plaintiff in any manner ever consented to this arrangement. But it is claimed that his own laches in failing to act or elect or to inform defendant of that election in the matter, amounted to ratification by plaintiff in his own favor, while the defendant was apparently acting on his rights, or those of his wife as owner in possession, occupying the house, and building an addition to it. Ratification of the unauthorized acts of an agent by neglecting for an unreasonable length of time after knowledge of them to repudiate them, while the opposite party is acting on them, is an application of the doctrine of equitable estoppel. It is applied against the party guilty of laches, not in his favor.

The fact that the house was built on skids, as described, is a circumstance going to show that plaintiff intended that the house should remain personal property, and that he intended to remove it; but it would not excuse him for failing to remove it for an unreasonable length of time.

We are of the opinion that by reason of plaintiff's laches in failing to remove the house within a reasonable time after he was dispossessed, the house became a part of the realty, and has ceased

to be the property of the plaintiff.  *Smith* v. *Park*, 31 Minn. 70, (16 N. W. 490.)

The order appealed from is reversed.

BUCK, J., absent, sick, took no part.

(Opinion published 58 N. W. 823.)

