UNITED STATES v. PINE RIVER LOGGING & IMPROVEMENT CO. et al.

(Circuit Court of Appeals, Eighth Circuit.  January 18, 1897.)

No. 780.

TROVER AND CONVERSION—TIMBER CUT FROM PUBLIC LANDS—AGREEMENT WITH GOVERNMENT.

The United States government, through an agent of the land office, seized certain logs which were in the possession of defendants, claiming that they had been unlawfully cut on an Indian reservation.  Thereupon a contract was entered into between the government and defendants, by which it was agreed, in order to preserve the logs free of cost to the United States, that they might be removed to a boom in the Mississippi river at Minneapolis, with the distinct understanding that the government's possession of the logs should not be questioned or impaired on account of such removal, and that nothing in the contract should impair any right of either party in the logs. The logs were removed to Minneapolis, and, it being found desirable to manufacture them into lumber, defendants gave bonds to the government, reciting the previous proceedings, and the purpose to have the logs manufactured into lumber to preserve the property for the interest of all concerned, and conditioned for the payment of any judgment that might be recovered by the government against the defendants, in any form of action, on account of the premises.  The defendants, after the logs were sawed, sold the lumber, and took the proceeds.  Held, that the government did not, by accepting the bonds, agree to relinquish its rights in the logs, or consent that the lumber made from them might be sold by the defendants for their own benefit, and, upon proving that the logs were wrongfully cut, it would be entitled to recover from the defendants for a conversion thereof, and not merely for a trespass on the Indian reservation.

In Error to the Circuit Court of the United States for the District of Minnesota.

John E. Stryker, for plaintiff in error.

Eugene G. Hay and J. B. Atwater, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge.    This suit was brought by the United States against the Pine River Logging & Improvement Company, a corporation, and Joel B. Bassett and William L. Bassett, co-partners as J. B. Bassett & Co., who are the defendants in error, and against John S. Pillsbury and Charles A. Smith, co-partners as C. A. Smith & Co., for the wrongful conversion of 22,005,921 feet of pine lumber, which was alleged in the complaint to have been taken from the Mississippi Indian reservation in the state of Minnesota.    The complaint, which contained nine counts, charged, in substance, that nine different parties had wrongfully felled certain pine trees standing on said Indian reservation, and had cut the same into logs, and had removed the logs from the reservation; that the trespasses in question were committed at the special instance and request of the defendants; that the logs, when thus cut, had been delivered to the defendants; that the defendants had thereupon caused the logs to be floated down the Mississippi river to the city of Minneapolis, and to be there manufactured into lumber; and that they had sold the lumber, and had appropriated the proceeds thereof to their own use.

The answers which were filed by the defendants to the aforesaid complaint alleged, in substance, the following facts:    That the logs referred to were cut under and by virtue of contracts which had been entered into with certain Chippewa Indians for the cutting of dead and down timber found on said reservation; that said contracts had been executed in pursuance of the provisions of an act of congress approved February 16, 1889, in relation to the cutting of dead and fallen timber on Indian lands (25 Stat. 673, c. 172); that payment for the logs so cut and removed had been made in full to the United States and to the proper Indian agent in accordance with the provisions of said contracts; that said logs were so cut by said Indians, and delivered to and accepted by the defendants in good faith, in the honest belief that said logs had been lawfully cut under said contracts, from dead and down timber, and that the defendants were entitled to the same, and became the owners thereof upon delivery of the logs, and upon the making of the aforesaid payments; that, after the said logs had been delivered to the defendants, and before they were floated down the river to Minneapolis, the United States, through its proper officer, had seized and taken possession of the logs, claiming that they were cut from green and growing timber, and not from dead or down timber; that thereafter, for the purpose of preserving said logs, and realizing the full value of the same for the party who should ultimately be determined to be owner thereof, a contract was entered into between the United States and the defendants, which was as follows:

"This agreement, made and entered into this 27th day of May, 1892, by and between the government of the United States, * * * party of the first part, and the Pine River Logging & Improvement Company, * * *. and J. B. Bassett & Company, * * * witnesseth: That whereas, the United States, by and through

a special agent of the general land office, has seized and is now in the undisputed possession of certain pine saw logs heretofore cut on the Winnebigoshish and Leech Lake Indian reservations, in the state of Minnesota, said logs being now in the waters of the Winnebigoshish Lake, Leech Lake, Leech river, Mississippi river, and Ball Club Lake, state of Minnesota, and within the limits of the Indian reservations aforesaid; and whereas, it is apprehended by both parties that said logs will suffer deterioration in quality by being suffered to remain where they now are until the season of 1893; and whereas, the parties of the second part desire, for the preservation of whatsoever property interest they may have in said logs, to remove, or cause the same to be removed, to a boom in the Mississippi river near the city of Minneapolis, and are willing to so remove said logs without questioning or attempting to disturb the possession thereof in the United States: Therefore, it is mutually agreed and understood that the parties of the second part may, without charge or cost to the United States, and under the supervision of the special agent of the general land office, cause said logs to be driven from their present position, through the waters of the Mississippi river, to such a boom in the Mississippi river at or near the city of Minneapolis as the Mississippi & Rum River Boom Company may designate: provided, that said logs shall be separated from all other logs and detained at Minneapolis in the boom to be designated by the boom company aforesaid, subject to the order of the commissioner of the general land office. In consideration of the covenant and agreement aforesaid, and with the distinct understanding that the possession of the United States shall in no sense be questioned or impaired on account of the location of the logs, the United States does hereby agree, through the commissioner of the general land office, that said logs may be driven in the manner and subject to the conditions hereinbefore stated: provided, that nothing in this contract contained shall be held in any proceeding, legal or otherwise, hereinafter to be had, to impair any right, title, property, or interest that the said parties of the second part, or either of them, or the United States, may have in or to the said logs, or any of them; the object of this contract being to recognize and continue possession in the United States, and to allow said logs to be driven without in any way affecting the question of right, title, property, or interest in the logs, and to leave such questions for future determination."

The answers further showed that thereafter, on March 10, 1893, after the logs had been driven to the city of Minneapolis in compliance with the provisions of the aforesaid contract, two bonds were accepted by the United States, one of them being executed by the Pine River Logging & Improvement Company as principal, and the other by the members of the firm of J. B. Bassett & Co. as principals. The bond executed by the Pine River Logging & Improvement Company contained the following recitals and condition, and the bond executed by the firm of J. B. Bassett & Co. was of like tenor and effect:

"Whereas, the above-named Pine River Logging & Improvement Company, principal, did in the year 1891 enter into divers contracts with sundry Indians of the Chippewa Nation, which contracts were duly approved by the department of the interior, whereby each of the said several Indians so contracted with were to cut, haul, and deliver during the season of 1891–92 onto certain waters of the Mississippi river a certain quantity of pine saw logs to be cut on a certain Chippewa Indian reservation in Minnesota, from dead and down timber, and when so cut to deliver said logs to the above-named principals; and whereas, each of said Indians did proceed, in pursuance of said contract, to cut a certain quantity of pine saw logs, and did deliver them in certain waters of the Mississippi river to the above-named principal; and whereas, a controversy afterward arose between said principal and the United States as to whether the said logs so cut were cut from dead and down timber, or as to whether the same were in great part cut from green timber; and whereas, in consequence of such a controversy, said logs, while in the possession of said principal, were seized at or about their place of delivery to the said waters, by the United States, acting through the officers and employés of the department of the interior; and whereas, the United States, and on May

27, 1892, entered into a written agreement in duplicate that the said logs so seized shall remain in the possession of the United States, but shall be driven at its expense by the said principal from said point of seizure to within the limits of the Mississippi & Rum River Boom Company; and whereas, the said logs have been so driven by the said principal; and whereas, the department of the interior has not yet completed its investigation into the facts of said case, and it is considered important by both parties that the said logs be further driven to the mill and manufactured for the preservation of the property, for the interest of all concerned, pending said investigation and a suit to be instituted by the United States, if it shall elect to do so, to determine the questions at issue between the parties: Now, therefore, the condition of this obligation is such that, if the said parties of the first part shall well and truly pay or cause to be paid, or satisfy or cause to be satisfied, to the United States of America, any judgment that may be rendered against the above-named principal in any form of action or suit which may be brought by the United States against said above-named principal on account of the premises hereinbefore recited, not to exceed the penalty of this bond, then this obligation to be void; otherwise to be of full force and effect."

Replying to the aforesaid answers, the United States admitted, in substance, that the defendants the Pine River Logging & Improvement Company and J. B. Bassett & Co. had entered into contracts with the various persons named in the answers for the cutting of logs from dead and down timber on said Mississippi Indian reservation, but it denied that the logs in controversy had been cut pursuant to said contracts, or in accordance with the act of congress of February 16, 1889, authorizing the cutting of dead and down timber on Indian reservations. It averred, on the contrary, that the logs on account of which it sued were cut from pine trees on said reservation which were alive and standing. The United States admitted that it had seized and taken possession of the logs in controversy, subsequent to the delivery thereof to the defendants; that it had thereafter entered into a contract with the defendants, such as was described in the answer, for the driving of the logs down the river to the city of Minneapolis, and that it had thereafter, on March 10, 1893, accepted from the defendants the bonds which were set forth in full in the answers. After the case was at issue on the aforesaid pleadings, the defendants the Pine River Logging & Improvement Company, and Joel B. Bassett and William L. Bassett, composing the firm of J. B. Bassett & Co., filed a motion for judgment against the government on the pleadings, for the sole reason, as stated in the motion, that on the facts admitted by the pleadings "the plaintiff above named [the United States] is not entitled to maintain an action of trover or conversion against said two defendants, or either of them, for the matters and things set out in said cause of action." This motion was sustained by the circuit court, and a judgment was entered against the United States. To reverse said judgment the case was removed to this court by a writ of error.

The grounds upon which the defendants in error seek to sustain the summary judgment which was entered in their favor by the circuit court is that by accepting the two bonds of date March 10, 1893, the United States, in effect, agreed to relinquish all of its right, title, and interest in the logs which had been cut on the Indian reservation, and to look to the bonds for whatever indemnity it might be able to obtain for the wrong and injury complained of. It is urged, in substance, that by accepting the bonds the government not only

agreed that the logs might be sawed into lumber, but that it also impliedly agreed that the lumber might be sold by the defendants for their own benefit; that the government cannot count on the sale of the lumber by the defendants, after it was sawed, as a wrongful act, nor maintain an action against the defendants, except for a trespass on lands belonging to the United States, and that in such action the damage recoverable is merely compensation for the injury done to the land over and above the value of the timber which was cut and removed. We are not able to assent to that view of the case. By the terms of the bonds it is obvious that the government cannot maintain a suit thereon against the defendants, until it has first recovered a judgment against them in some other form of action; therefore the view contended for denies the right of the government to recover any compensation for the large amount of standing timber alleged to have been cut on the reservation, and limits its recovery to compensation for such injury as may have been done to the land over and above the value of the severed trees, while the defendants were engaged in removing the timber. The bonds contained no provision authorizing the defendants to sell the timber in controversy after it should be manufactured into lumber at Minneapolis; and in view of the recitals found therein, and the circumstances under which they were executed and accepted, it is clear, we think, that the government neither intended to authorize a sale of the lumber, nor to part with its title thereto, nor to relinquish any of its rights growing out of the original wrongful acts described in the complaint. After the logs were seized, the government, by the agreement of May 27, 1892, consented that the logs might be driven "without charge or cost to the United States, and under the supervision of the special agent of the general land office, * * * to such boom in the Mississippi river, at or near the city of Minneapolis, as the Mississippi & Rum River Boom Company may designate," for the purpose of preserving the property for the benefit of the party who should be adjudged to be the rightful owner; provided, however, that nothing done in that behalf "should be held in any proceeding, legal or otherwise, * * * to impair any right, title, property, or interest that the said parties of the second part, or either of them, or the United States, may have in or to the said logs, or any of them." The object of the contract was declared to be "to recognize and continue possession in the United States, and to allow said logs to be driven without in any way affecting the question of right, title, property, or interest in the logs, and to leave such questions for future determination."

When the logs had reached Minneapolis, it was found necessary to manufacture the same into lumber, as the bond recites, "for the preservation of the property for the interest of all concerned, pending said investigation, and a suit to be instituted by the United States, if it shall elect to do so, to determine the questions at issue between the parties." We fail to discover in the provisions of these bonds anything tantamount to a consent on the part of the United States that the defendants might market the lumber, when the logs should have been sawed, for their own account, or any implied agreement by the United States that it would relinquish its title thereto. By the

acceptance of the bonds the government contemplated no relinquishment of its property rights, and no alteration in the legal status of the parties. · It did consent that the form of the property might be changed from logs to lumber for the purpose of preserving its value, but beyond this its consent did not extend. The manifest purpose of the parties in entering into the agreement of May 27, 1892, and in executing the bonds of May 10, 1893, was to put the property in such form and shape that its value might be preserved, pending the litigation which was in contemplation, without altering the legal rights of either party. After the logs were manufactured into lumber, the defendants held the lumber as agents or bailees of the United States, precisely as they had previously held the logs under the agreement of May 27, 1892, while they were being driven down the river to Minneapolis.

It results from these views that the sale of the lumber by the defendants, and the appropriation of the proceeds to their own use, was a wrongful act, on account of which the United States may maintain an action for conversion, provided it appears on the trial, as is alleged in the petition and in the reply, that the lumber was in fact made from growing trees which were felled on the Indian reservation in question, and were cut into logs, and removed therefrom, in violation of law. Moreover, the government did not lose its right to maintain an action for conversion on account of the wrongful removal of the logs from the reservation, the same having been cut from growing trees, by reason of the fact that it subsequently seized the logs, assumed the possession thereof, and entered into the contract aforesaid for driving them down the river to the city of Minneapolis. The doctrine is well settled that the recovery of the possession of property, otherwise than by judicial process, which has been wrongfully converted, does not deprive the true owner of his right to maintain an action of trover. In such a case the recovery of the property from the wrongdoer cannot be pleaded in bar to the action, but merely in mitigation of damages. Cattle Co. v. Hall, 33 Fed. 236; Bank v. Leavitt, 17 Pick. 1; Curtis v. Ward, 20 Conn. 204; Ewing v. Blount, 20 Ala. 694; Pierce v. Benjamin, 14 Pick. 356, 361; Sparks v. Purdy, 11 Mo. 219, 223.

The question does not arise upon this record whether, in the event of a recovery by the United States, the defendants will be entitled, by way of mitigation of damages, to an allowance for the services rendered by the defendants in driving the logs from the place of seizure to Minneapolis, and sawing them into lumber, whereby the value of the property was enhanced. No such question was considered by the circuit court, and no opinion on that point will be expressed by this court on the present occasion. The trial court decided the case upon the theory that the facts admitted by the pleadings disabled the United States from maintaining the present action, and in so ruling we think that the trial court erred.

It is further contended in behalf of the defendants in error that, although the ground upon which the trial court based its judgment was erroneous, yet that the judgment in their favor ought not to be disturbed, because the record discloses a misjoinder of causes of

action, in that the Pine River Logging & Improvement Company and J. B. Bassett & Co. should have been sued separately for acts of conversion by them separately committed. There are two answers to this contention. The complaint which was filed by the United States does not disclose a misjoinder of causes of action. The allegations of the complaint are sufficient to show that all of the defendants were jointly concerned in the cutting and removal of the logs from the reservation, and the plaintiff may elect to rely for a recovery on the original act of conversion, rather than upon the sale of the lumber after the logs were sawed with the consent of the United States. A second reason why the judgment cannot be upheld on account of the alleged misjoinder of causes of action, even if that point was well taken, is that the judgment rendered by the circuit court is in such form that, if sustained, it would bar a subsequent suit against either of the defendants for the wrongful conversion of the property. The circuit court "ordered and adjudged * * * that the plaintiff * * * take nothing of the said defendants, the Pine River Logging & Improvement Company and Joel B. Bassett and William L. Bassett, * * * and that they, and each of them, do go hence without day." This is, without doubt, a final judgment on the merits; whereas, if the defendants were entitled to no greater relief than an order quashing the summons or dismissing the complaint because separate causes of action against different defendants had been erroneously united in the same complaint, the judgment should have been so expressed. The trial court evidently intended to dispose of the case on its merits, and entered a judgment accordingly. No attention was paid to the plea in abatement, and no action by the trial court was predicated upon that plea. We think, therefore, that the judgment cannot be upheld on the ground last suggested. The judgment of the circuit court is accordingly reversed, and the case is remanded for a new trial.