FIRST NAT. BANK OF KANSAS CITY, MO., v. RUSH.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1898.)

No. 956.

1. EVIDENCE—DEPOSITION—GENERAL OBJECTIONS.

General objections to a deposition must be overruled, if any part of the deposition appears to be admissible in evidence, or if the proponent calls attention to any part which is admissible in any view of the case.

2. SAME—ADMISSIONS AGAINST INTEREST.

Admissions of a party to a suit, against his interest, relative to the issue on trial, are always admissible in support of the claim of his opponent.

3. SAME—CONVERSION—REACQUISITION BY OWNER.

When the owner of converted property has recovered it, the measure of his damages is the expense he has necessarily incurred, and the value of the time he has spent in recovering it, together with the value of the use of the property, if any, while he was wrongfully deprived of it, not exceeding the total value of the property at the time of the conversion.

4. PLEDGE—SALE BY PLEDGEE TO HIMSELF—LIABILITY TO PLEDGOR—TENDER OF AMOUNT DUE.

A purchase by a pledgee, without the consent of the pledgor, of the collateral pledged, is voidable, not void. The pledgor may either affirm or repudiate the sale, but cannot do both. If he affirms it, his action validates it, and passes the title to the collaterals to the pledgee, and entitles the pledgor to the amount bid at the sale and no more. If he repudiates it, the sale is void, and the pledgee, still holding the collaterals, cannot be charged with conversion until he wrongfully parts with the possession and control over them. Until then he holds them under the original pledge, and is liable to deliver them only on payment of the debt.

5. SAME—DEPOSITION—GENERAL OBJECTION.

The defendant made his promissory note for $3,780 to the plaintiff's order, and pledged as security therefor certain shares of stock, with authority to sell on default. In an action on the note, to recover a balance due over and above $740, received on a sale of part of the collateral, it was admitted that plaintiff had sold the same to itself, and, after evidence on behalf of defendant that the stock was worth far more than the price thus paid, plaintiff offered in evidence a deposition, and exhibits consisting of letters written by defendant, tending to show that defendant had reacquired the stock for $1,056, and that the value of the stock at the time of its sale by plaintiff did not exceed that sum. The defendant objected to the deposition and exhibits as incompetent, immaterial, and irrelevant, and they were excluded. *Held* error.

In Error to the Circuit Court of the United States for the District of Kansas.

The plaintiff in error, the First National Bank of Kansas City, brought an action against the defendant in error, J. W. Rush, upon his promissory note for $3,780, made on February 5, 1894, and payable to the order of the bank. In its petition it set forth the note; alleged that Rush pledged to it as collateral security for the payment of this note 10 shares of the capital stock of the First National Bank of Ness City, Kan., and 64 shares of the capital stock of the First National Bank of Dighton, Kan.; that he gave it written authority to sell the same at public or private sale without notice, upon default in the payment of the note; that the bank had received on June 29, 1894, as the pro-

ceeds of the sale of the collaterals, $740; and that the defendant in error was still indebted to it for the unpaid balance of his note and interest. The defendant in error, in the amended answer upon which the case went to trial, admitted the execution of his note and the pledge of the bank stock, and alleged that the sale of the collaterals which the bank made on June 29, 1894, was in fact a sale to itself, but that it concealed this fact from the defendant in error; that it pretended that the sale had been made to Richard Allen, a janitor in the bank, for $740; that it caused the certificates of the stock to be surrendered, and had new certificates issued to Richard Allen; and that he had disposed of the same as his own property, free from all claims of the defendant in error. He alleged that the pretended sale to Allen and his disposition of the stock constituted a conversion of it by the bank; that it relieved the defendant in error from the necessity of making a tender of the amount due on his note, and entitled him to receive of the bank the actual value of his stock on June 29, 1894, which he alleged was $7,400, less the amount due on his note. A demurrer was interposed to this amended answer, and the circuit court sustained it. The judgment upon that demurrer was reversed by this court on the ground that, under the state of facts set forth in the answer, the defendant in error was not required to tender the amount of his debt before pleading and proving his counterclaim. Rush v. Bank, 36 U. S. App. 248, 17 C. C. A. 627, 71 Fed. 102. When the case returned to the trial court the bank denied the allegations of the amended answer, a trial was had before a jury, and a judgment of $2,048.62 was rendered against the bank. The fact that the bank was the real purchaser at the sale of the collaterals on June 29, 1894, was conceded at the trial. The officers of the bank testified that they bid in the property in for the bank in the name of Richard Allen, and caused the stock to be transferred to him to avoid permitting the bank to incur liability as a stockholder. The only question tried by the jury was the value of the collaterals at the time of the alleged conversion, and the court charged them that if their value was less on June 29, 1894, than the amount of the note and interest, the bank was entitled to a verdict for the difference, and, if their value was greater on that day than the amount of the note and interest, the defendant in error was entitled to a verdict for that difference. During the trial, and after the defendant in error had introduced testimony to the effect that the 64 shares of the stock of the First National Bank of Dighton were worth $5,120 on June 29, 1894; that the bank of Dighton never met with any heavy losses after that date; that its capital stock was $50,000, and that the net profits of the bank from July 1 to October 2, 1894, were $316.85; and after the plaintiff in error had produced evidence to the effect that it bid this stock in on June 29, 1894, in the name of Richard Allen for itself; that on July 13, 1894, it notified the defendant in error that it could purchase the collaterals back for the amount of the bid and interest, and that it subsequently sold them to E. E. Parker for $960,—the plaintiff in error offered in evidence the deposition of Parker, and copies of certain letters written by the defendant in error to Lowell & Parker, a firm of which Parker was a member, which were attached as exhibits to the deposition and were properly identified. The exhibits disclosed these facts: On October 6, 1894, the defendant in error wrote to Lowell & Parker to write to the plaintiff in error "what they would give you for five or ten shares of the Dighton stock. They hold 68 shares." On November 5, 1894, he wrote them: "I wired you last night to offer the First National Bank $640. If they accept this, wire me, and I will send you draft at once. This is all that I can get for it at this time, and even that is in the way of a trade." On November 19, 1894, he wrote them: "I cannot increase my offer, nor am I particular whether they accept the offer made. I have a trade on hand, and agreed to give them a definite answer by the first of the month. If they accept in the meantime, all right; if not, let it go, as I think now I can get hold of enough of it to do me for less money." On February 11, 1895, he wrote them: "Your message of to-day received and answered, and I will here confirm the same. 'Close deal. Draw at sight. See letter of to-day.' $800 is really every dollar the stock is worth to me at this time, but there are other reasons, which I will explain to you personally, as I expect to be in Boston within the next month, why I want this stock. On receipt of the stock you can draw at sight with stock attached for the amount, and send either in registered letter or per express, or, if you

deposit with your bank, instruct the bank to draw direct, so it will not fall into the hands of the First National of Kansas City." In the deposition Parker testified that he and his partner bought the 64 shares of stock in the Dighton National Bank from the plaintiff in error for $960 on February 11, 1895, the day on which the last letter quoted was written, and that within a few days of the time they purchased it they sold it through the defendant in error to J. Spaulding. whom he did not know, for $1,056, which is exactly 10 per cent. more than the amount which they paid for it. The defendant in error objected to the deposition and the exhibits "as immaterial, irrelevant, and incompetent, and not bearing upon the issues submitted to the jury." Counsel for the bank called the attention of the court to their claim that the deposition and exhibits tended to show that the defendant in error had regained the possession and control of the 64 shares of stock in the Dighton Bank for $1,056, and that the exhibits were evidence of the value of the stock at the time of the alleged conversion. The court nevertheless sustained the objections. The counsel for the bank then offered each and every question and answer in the deposition and every exhibit attached to it. The defendant in error objected to each question, answer, and exhibit. His objections were sustained, and the plaintiff in error excepted to the rulings of the court. These and other rulings are assigned as error.

A. R. Strother (R. L. Yeager, on brief), for plaintiff in error.

Clifford Histed (W. H. Rossington and Charles Blood Smith, on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

General objections to a deposition must be overruled, if any part of the deposition appears to be admissible in evidence, or if the proponent calls attention to any part which is admissible in any view of the case. Such objections raise the issue whether or not the proposed evidence is admissible under any circumstances or for any purpose, but they raise no other issue. If a court overrules them, its ruling must be sustained, unless it clearly appears that none of the evidence admitted could be lawfully received under the pleading and evidence in the case. If it sustains such objections, its rulings must be reversed, if any part of the evidence rejected was admissible upon any issue before the court. A case occasionally arises in which the proponent offers a great mass of evidence which does not appear on its face to have any relevancy to the issues on trial, and in which he does not call the attention of the court to any part of the mass which is admissible, and does not state the purpose of his offer, where a general objection is very properly sustained, as in Insurance Co. v. Frederick, 19 U. S. App. 24, 33, 7 C. C. A. 122, 127, 58 Fed. 144, 149, and Central Pac. R. Co. v. California, 162 U. S. 91, 117, 16 Sup. Ct. 766. But such cases are rare exceptions to the general rule, which must not be permitted to interrupt its steady and uniform application to the cases which fall within it. It is impractical. if not impossible, to take depositions so that every question and answer in them, and every exhibit attached to them, will pass the scrutiny of the court after astute counsel have had an opportunity to study and prepare objections to them, and a practice which would exclude all the admissible evidence in a deposition because it contains some irrelevant, incompetent, or immaterial matter would practically

destroy the value of depositions, vastly increase the expense of litigation, and intolerably delay the administration of justice. The general objections that a deposition and the exhibits attached to it are incompetent, irrelevant, and immaterial, and do not bear upon the issues in the case, must be overruled, if any part of the deposition or of the exhibits is admissible upon any issue before the court. If a portion of the evidence offered is inadmissible, and a part is admissible, the remedy of the objector is to oppose the admission of the former when the proponent reaches it in reading his deposition to the jury. His general objections are too broad if any part of the proposed evidence is admissible. Rush v. French, 1 Ariz. 99, 128, 25 Pac. 816; Pettigrew v. Barnum, 11 Md. 434, 451; Meyers v. Casey, 14 Cal. 542, 544; Higgins v. Wortell, 18 Cal. 330, 333; Merriam v. Railroad Co., 20 Conn. 354, 364; Walker v. Forbes, 31 Ala. 9, 11, 12; Love v. Dargan, 21 Ala. 583 –585; Litchfield v. Falconer, 2 Ala. 280, 285; Cemetery Co. v. Shubert, 2 Head, 116, 121; Webb v. Richardson, 42 Vt. 465, 470; Hurlburt v. Hurlburt, 63 Vt. 667, 670, 22 Atl. 850; Harriman v. Brown, 8 Leigh, 697, 705, 706.

The only objections to the deposition of Parker, and to the exhibits which accompanied it, were that they were incompetent, irrelevant, and immaterial, and did not bear upon the issues in the case. The attention of the court was sharply called by counsel for plaintiff in error to the fact that they tended to show that the defendant in error had recovered the 64 shares of stock in the Dighton Bank for the sum of $1,056, and that this stock was not worth more than $800 at the time of the alleged conversion, but the court nevertheless sustained the objections. It is unnecessary to stop to consider whether or not there was any question or answer or exhibit contained in the offer which did not bear upon the issues on trial. Under the established rule to which reference has been made, the only question these objections raised was whether there was any part of the proposed evidence which was admissible under the pleadings and evidence before the court. If so, these general objections should have been overruled. When the deposition was offered, the issue was on trial whether the 64 shares of the stock of the Dighton Bank were worth $5,120 or $640 on June 29, 1894. The defendant in error had introduced evidence to the effect that it was worth the former sum on that day, and that the Dighton Bank had met with no heavy losses thereafter. The inference was irresistible that the stock in that bank was worth as much in the autumn of 1894 and in the winter which followed as it was on June 29, 1894. Some of the exhibits attached to the deposition were properly proved copies of letters from the defendant in error to Lowell & Parker, in which on November 5, 1894, he wrote that he had wired them to offer the plaintiff in error $640 for this stock; that this amount was all he could get for it then; in which on November 19, 1894, he wrote that he could not increase his offer; and in which on February 11, 1895, he wrote to close the deal and draw at sight; that $800 was all the stock was worth to him at that time, but that there were other reasons why he wanted it. In the deposition Parker testified that his firm bought the stock of the plaintiff in error on that day for $960, and sold it a few days later for $1,056 to one J. Spaulding, with whom he was not acquainted, through

the defendant in error, who had directed them to make the purchase. All this was very persuasive; indeed, it was quite convincing evidence that the stock was not worth $5,120 in 1894, and it was admissible in evidence on the issue of value under two well-established rules: First. The letters were admissions of the defendant in error against his interest of the value of the stock of the Dighton Bank at times when the evidence already received proved that it could not have been worth less than it was on June 29, 1894. They were admissions that the stock which he claimed was worth $5,120 was not worth more than $800 at the time of the alleged conversion. Admissions of a party to a suit against his interest, relative to the issue on trial, are always admissible in support of the claim of his opponent. 1 Greenl. Ev. (12th Ed.) § 171; Id. p. 201, § 172; Id. p. 202, § 194; Id. pp. 222, 223; Cook v. Barr, 44 N. Y. 156, 158; Snyder v. Reno, 38 Iowa, 329, 333, 334; Morse v. Diebold, 2 Mo. App. 163, 166, 167. Second. The letters and the testimony of Parker were very persuasive evidence that Lowell & Parker were the mere agents of the defendant in error to purchase, and that the defendant in error was the real purchaser of the 64 shares of stock from the plaintiff in error on February 11, 1895. They furnish sufficient evidence, to say the least, to sustain a finding by the jury that the defendant in error recovered the possession of, and control of the title to, this stock in February, 1895, for the sum of $1,056. This was a fact which it was important for the plaintiff in error to establish, because, if it succeeded, this limited the amount of damages which the defendant in error could recover for the conversion of this stock to the $1,056, which he paid to recover it, and the value of the time which he used in securing its recovery. Compensation is the basic rule for the measure of damages. Rockefeller v. Merritt, 40 U. S. App. 666, 679, 22 C. C. A. 608, 616, 76 Fed. 909, 917. If for the sum of $1,056 the defendant in error in February, 1895, recovered the control of the possession of, and of the title to, the 64 shares of stock which he alleged that the plaintiff in error converted in 1894, he could not have lost more by that conversion than $1,056, and the value of any time he spent in recovering the stock, and he could not recover more than those amounts with interest, because they would fully compensate him for his entire loss in the transaction. When the owner has recovered converted property, the measure of his damages is the expense he has necessarily incurred, and the value of the time he has spent in recovering it, together with the value of the use of the property, if any, while he was wrongfully deprived of it, not exceeding the total value of the property at the time of the conversion. Field, Dam. § 110; 1 Suth. Dam. 239; Dodson v. Cooper, 37 Kan. 346, 349, 350, 15 Pac. 200; Sprague v. Brown, 40 Wis. 612, 619, 621; Curtis v. Ward, 20 Conn. 204, 206; Hurlburt v. Green, 41 Vt. 490, 492, 494; U. S. v. Pine River Logging & Imp. Co., 49 U. S. App. 24, 24 C. C. A. 101, 106, 78 Fed. 319. For the reasons we have stated, the general objections to the deposition of Parker and to its accompanying exhibits should have been overruled, and the rejection of this evidence constituted a fatal error, which compels a reversal of the judgment below, and renders a consideration of the other errors assigned unnecessary. In view, however, of the facts that this case must be retried, and that the evidence offered and in-

troduced in the trial under review tends strongly to show that the plaintiff in error bid in all the collaterals at the sale of June 29, 1894, for itself; that it held control of the stock of the Dighton Bank until February, 1895, and the stock of the Ness City Bank ever since; that the defendant in error knew these facts, and bought the stock of the Dighton Bank in February, 1895, for $1,056; and in view of the fact that it is not yet too late for the plaintiff in error to amend its petition and plead the truth (Bryan v. Baldwin, 52 N. Y. 232, 234),—we think it not unwise to call attention to the rules applicable to this state of facts, if it should be established. When this case was before us upon the demurrer to the amended answer, these facts had not been developed, and we had no occasion to consider or announce the principles which govern them. The question then was whether or not a pledgor, who was sued upon his debt, must tender payment before he could maintain his counterclaim for damages for a sale of his collaterals to a third person, who had transferred them beyond the control of the pledgor, without notice to the latter that he held them meanwhile as the mere agent for the pledgee, who was the real purchaser at the sale. Our answer was that a tender was unnecessary, because the pledgee had caused it to appear to be futile by apparently placing the stock beyond its control. We adhere to that view. But whether the pledgor knew or was ignorant that the collaterals still remained after the sale in the control of the pledgee, it cannot escape these settled rules of the law of bailment.

A purchase by a pledgee without the consent of the pledgor of the collateral pledged is voidable, but it is not void. The pledgor has the option to affirm or to repudiate the sale, but he cannot do both. If he affirms the sale, his action validates it, and passes the title to the collaterals to the pledgee, and entitles the pledgor to the amount bid at the sale, but to no more. If he repudiates it, the sale is void, and the pledgee has the collaterals under the original pledge, with the same rights and subject to the same liabilities as if no sale had been attempted. If the pledgor repudiates the sale, the pledgee still holds the collaterals, and cannot be charged with conversion until he wrongfully parts with the possession of and control over them. Until then he holds them under the original contract of pledge, and is liable to deliver them only on payment of the debt. Killian v. Hoffman, 6 Ill. App. 200, 202; Stokes v. Frazier, 72 Ill. 428, 432; Bank v. Minot, 4 Metc. (Mass.) 325, 329; Bryan v. Baldwin, 52 N. Y. 232, 235; Insurance Co. v. Dalrymple, 25 Md. 242. These principles, carefully applied to the facts which may be developed upon the trial of this case, will result, we believe, in a fair verdict and a just judgment. The judgment below is reversed, and the case is remanded, with directions to grant a new trial.