Argued 6 July, decided 15 August, 1904.

## ELDRIDGE v. HOEFER.

[77 Pac. 874.]

CROSS-EXAMINATION—EXPLANATORY MATTER.

1. All the facts relating to a material question should be brought out if they are desired: for instance, in an action for conversion of a building claimed by both parties, it having been shown as an admission against interest that plaintiff had possession of the house and sold it, and that defendant then leased it from the vendee, defendant is entitled to explain his action.

CREATION OF RELATION OF LANDLORD AND TENANT.

2. In view of Section 253, B. & C. Comp., which entitles a purchaser of realty at an execution sale to immediate possession, an agreement between such a purchaser and the former owner that the latter may retain possession at a stipulated rent, with the privilege of redeeming after the statutory period for so doing has expired, creates the relation of landlord and tenant between them.

RIGHT OF TENANT TO REMOVE FIXTURES AFTER OUSTER.

3. A tenant who has been wrongfully ousted from his leased land may reënter within a reasonable time, which will be determined from the circumstances, and remove his improvements, not injuring the freehold.

TROVER BY TENANT AGAINST LANDLORD.

4. Trover may be maintained by a tenant against his landlord for the seizure and conversion of chattels left upon his having been wrongfully evicted from the leased premises.

LIMITATION IN TROVER ACTIONS.

5. Trover by a tenant whose landlord wrongfully evicted him and converted sundry of his chattels on the premises is barred only by the general statute of limitations.

MEASURE OF DAMAGES IN ACTIONS OF TROVER.

6. The measure of damages in trover for conversion of an article which has been returned to and accepted by plaintiff, when special damages are not alleged, is the value of the property at the time of the conversion, with interest thereon to the trial, less its value when returned, with interest thereon from that date, and not the value of its use while in defendant's possession.

From Marion : GEORGE H. BURNETT, Judge.

This is an action by F. J. Eldridge against John Hoefer and another, partners, to recover damages for the conversion and use by the defendants of a hophouse for the years 1896 to 1901, inclusive. It is alleged in the complaint that plaintiff is the owner of the hophouse in question ; that in August, 1896, the defendants wrongfully and unlawfully seized and took possession of it, and converted the same to their own use until August 20, 1902, when it was restored to the plaintiff ; that during all such time the defendants

continuously used and occupied the house, to plaintiff's damage in the sum of $1,930; that at the time of the conversion, in 1896, the house was worth $840, and in August, 1902, at the time the possession was regained by the plaintiff, its value was $500; that during the time defendants used and occupied the house, the reasonable rental value thereof was $225 a year for drying hops, and $40 a year for storing hops, and, by reason of the wrongful and unlawful withholding of the possession of the same, and the use and occupation thereof, by the defendants, the plaintiff was damaged in the sum of $1,590.

The answer denies plaintiff's ownership of the house, the wrongful possession thereof by the defendants, that the reasonable value of the use was any greater sum than $50 a year, and, for an affirmative defense, alleges that the house was built by the plaintiff on the premises of the defendants in payment of the rent of a hopyard for the year 1895; that at the expiration of the lease the plaintiff surrendered to the defendants the possession of the premises, together with the house, and the defendants occupied and used the same until August, 1902, when the plaintiff wrongfully and unlawfully removed the house therefrom without the knowledge or consent of the defendants.

The reply denies the material allegations of the answer, and affirmatively alleges that on and prior to December 19, 1894, plaintiff was the owner of the premises upon which the hophouse was built, and on that day a decree was rendered foreclosing a mortgage given by him to Goodman & Son, and ordering the sale of the mortgaged premises; that the property was subsequently sold under the decree, and purchased by Goodman & Son, who thereafter assigned and transferred the certificate of sale to the defendants; that, under an agreement made with the defendants, the plaintiff remained, in possession of the premises, agreeing to deliver to them one third of the hops

grown thereon each year, as rent; that defendants pro-
posed to him that they would give him two years in.addi-
tion to the time allowed by law in which to redeem from
the sale under the foreclosure decree if he would build
and equip at his own expense a hophouse on the premises,
which should belong to him until the redemption; that,
relying upon such agreement, he built and equipped the
house, and remained in possession until some time in
August, 1896, when the defendants repudiated the con-
tract, ousted the plaintiff, and unlawfully took possession
of the hophouse, and continued in possession thereof until
August, 1902. The plaintiff had verdict and judgment for
$1,500, and defendants appeal, assigning.as error the ad-
mission and rejection of testimony, the overruling of a
motion for nonsuit, and the giving of certain instructions.

                                            REVERSED.

For appellants there was a brief and an oral argument
by *Mr. George G. Bingham.*

For respondent there was a brief over the names of
*Peter H. D'Arcy* and *Carson & Adams*, with an oral argu-
ment by *Mr. D'Arcy* and *Mr. Loring K. Adams.*

Mr. Justice BEAN, after stating the facts in the above
terms, delivered the opinion of the court.

1. The hophouse in controversy was built by the plain-
tiff in 1895 on premises formerly owned by him, but which
had previously been sold under a decree of foreclosure,
the sale confirmed, and the certificate of sale purchased
by the defendants, who subsequently received a deed for
the premises. About August 20, 1902, the plaintiff, with-
out defendants' knowledge or consent, removed the house
to an adjoining tract of land and sold or pretended to sell
it to one Aral. On September 5, 1902, the defendants, by
contract, in writing with Aral, leased the house for that

45 OR.——16

year at a rental of $15 a day for the time it should be used by them. This lease was introduced in evidence as an admission by the defendants of title to the house in the plaintiff, Aral's assignor. The defendants offered, but were not allowed, to show that the reason they made the lease was that the house had been moved from their premises by Eldridge at the beginning of the hop-drying season, and that they had no other house which they could use, and so made the contract of leasing in order to save their crop. This evidence was, in our opinion, competent, and should have been admitted. There was a sharp conflict between the parties as to the contract under which the plaintiff built the house, and its ownership; defendants insisting that it was built for them in payment of the rent for the year 1895, and therefore belonged to them. The plaintiff, however, contended that it was built by him in consideration of an agreement with the defendants, by which he was to remain in possession of the premises for two years after the time allowed by law for the redemption thereof had expired, with the right to redeem within such time, and that such agreement was wrongfully terminated by the defendants, and the house converted to their own use. The lease of the house from Aral by the defendants was a circumstance tending to support the plaintiff's contention that the house belonged to him, and that the defendants so understood. If, however, the circumstances under which the lease was made were such as the defendants offered to show, the effect of the alleged admission would be materially lessened. The lease was not admitted to estop the defendant from denying Eldridge's title, but merely as an admission against interest. Its value as such would necessarily depend upon the circumstances under which it was made, and the reasons which prompted its execution by the defendants. The evidence offered was

therefore admissible, and for the error in excluding it the judgment must be reversed.

In view of another trial, it is deemed proper to indicate briefly the opinion of the court upon some other points in the case.

2. A contention is made that the motion for a nonsuit should have been allowed, because the action was not commenced within a reasonable time after the repudiation by the defendants of the alleged contract for the leasing of the premises to plaintiff, and an extension of time for redemption thereof from the sale under the foreclosure decree. Under our statute a purchaser of real property at execution sale is entitled to possession thereof from the day of sale until a resale or redemption, unless it is in possession of a tenant holding under an unexpired lease: B. & C. Comp. § 253. The agreement, therefore, between the plaintiff and the defendants, if made, that plaintiff might remain in possession of the premises, paying rent therefor, for two years after the time for redemption had expired, with the right to redeem within such time, would constitute the relation of landlord and tenant between them.

3. If the contract was wrongfully terminated by the defendants, and the plaintiff ousted, he would be entitled to a reasonable time thereafter in which to reënter and remove improvements put on the premises by him, if it could be done without substantial injury to the freehold: Gear, Land. & Ten. § 116; *Central Branch R. Co.* v. *Fritz*, 20 Kan. 430 (27 Am. Rep. 175); *Commissioners of Rush County* v. *Stubbs*, 25 Kan. 312; *Turner* v. *Kennedy*, 57 Minn. 104 (58 N. W. 823); *Waters* v. *Reuber*, 16 Neb. 99 (19 N. W. 687, 49 Am. Rep. 710); *Ombony* v. *Jones*, 19 N. Y. 234; *Meader* v. *Brown*, 5 New York St. Rep. 839. What constitutes a reasonable time in which a tenant may remove a fixture after the tenancy has been wrongfully

terminated by the landlord is to be determined from the facts and circumstances of each case, and the conduct of the respective parties. The question is not involved here, however, nor the right of the plaintiff to remove the house from the premises, if it belonged to him.

4. The action is in trover, for an unlawful conversion of the house by the defendants. The evidence tended to show that plaintiff never intended to abandon the building, but promptly asserted his claim thereto; that his title and right to the possession was denied by the defendants, who wrongfully and unlawfully entered and took possession of the premises before the expiration of the lease, forbade the removal of the hophouse, and converted the same to their own use. Under such circumstances, a tenant may maintain an action of trover against his landlord: *Rosenau* v. *Syring*, 25 Or. 386 (35 Pac. 844).

5. And his right of action is not barred until the general statute of limitation interposes: *Porter* v. *Foster*, 20 Me. 391 (37 Am. Dec. 59).

6. This action was brought and tried on the theory, apparently accepted by all parties until this appeal, that, if plaintiff was entitled to recover, the measure of damages would be the reasonable rental value of the house while it remained on the premises of the defendants. The action is in trover. In such an action the rule for the measure of damages is well understood. The title to the property alleged to have been converted is regarded as having passed to the defendant, who is liable for its value, with simple interest. The measure of damages, therefore, in an action of trover, unless plaintiff, by reason of the unlawful act of the defendant, has suffered some special loss or injury, which must be alleged, is the value of the property at the time of the conversion, with interest thereon to the trial (4 Sutherland, Damages, 3 ed. § 1109; 2 Sedgwick, Damages, 8 ed. § 493; Field, Damages, § 792; Eg-

gleston, Damages, § 288), unless, perhaps, the property is of a fluctuating value, when, under some of the authorities, the highest value at any time between the conversion and the trial will be taken as a basis for estimating the damages. See 2 Sedgwick, Damages, (8 ed.) § 597, *et seq.*; Field, Damages, § 798, *et seq.*

It is argued, however, that this rule does not apply where the property has been returned to and accepted by the plaintiff, but in such cases the true measure of damages is the value of the use of the property during the time it was in the possession of the defendant, and there are some authorities to that effect: *Ewing* v. *Blount*, 20 Ala. 694; *Fields* v. *Williams*, 91 Ala. 502 (8 South. 349). This position, it seems to us, overlooks the fundamental principle underlying an action of trover. It is based upon the theory that by the conversion the title to the property passes to the defendant, and he is liable for its value. The subsequent return to and acceptance of the property by the owner is admittedly no bar to an action of trover for its conversion, but goes only in mitigation of damages: *Murphy* v. *Hobbs*, 8 Colo. 17 (5 Pac. 637); *Curtis* v. *Ward*, 20 Conn. 204; *Bigelow County* v. *Heintze*, 53 N. J. Law, 69 (21 Atl. 109); *United States* v. *Pine River L. & I. Co.* 78 Fed. 319 (24 C. C. A. 101). Now, if an action may be maintained against the wrongdoer for the conversion, notwithstanding the return to the owner of the property unlawfully converted, it follows as a logical sequence that in such action the accepted rule for the measure of damages in an action of trover must be applied, the return of the property going only in mitigation of such damages. It is accordingly held by the better authorities that, in case of a return of property, the measure of damages in an action of trover for its conversion, when special damages are not alleged, will, in general, be the value of the property at the time of the conversion, with interest thereon to the trial,

less its value at the time of the return, with interest thereon from that date, and not the value of its use during the time it was in the possession of the defendants: 26 Am. & Eng. Enc. Law (1 ed.) 851; 4 Sutherland, Damages (3 ed.) § 1159; 2 Sedgwick, Damages (8 ed.) § 494; *Gove* v. *Watson*, 61 N. H. 136; *Flagler* v. *Hearst*, 86 N. Y. Supp. 308. *Gove* v. *Watson*, 61 N. H. 136, was an action in trover for the conversion of oxen which had been returned and accepted by the plaintiff. During the time defendant had possession of the oxen, he worked them without plaintiff's knowledge or consent. The plaintiff sought to recover the value of such work as an item of damages, but the court held that the measure of damages was the difference between the value of the oxen at the time of the conversion and their value at the time they were retaken by the plaintiff. *Flagler* v. *Hearst*, 86 N. Y. Supp. 308, was an action to recover damages for the conversion of a steam yacht, which was returned to the plaintiff before the action was tried. The trial court submitted to the jury as the measure of damages the fair rental value of the yacht during the time it was in the possession of the defendant, but the supreme court held that the true measure of damages was its value at the time of its conversion, with interest added, less its value at the time of the return, with interest on that sum, and that it was error to submit to the jury the question as to the value of its use during the time it was in the possession of the defendant.

The judgment will be reversed, and a new trial ordered.

REVERSED.