THE STATE OF KANSAS V. DAVID SIMMONS.

No. 15,105.   (88 Pac. 57.)

SYLLABUS BY THE COURT.

1. MURDER — *Plea of Self-defense* — *Evidence of Defendant's Reputation.*  Upon a trial on a charge of murder it is error to exclude competent evidence offered by the defendant, who admits the killing and claims that it was done in self-defense, which tends to prove that, for twenty years or more, from childhood to within two to four years prior to the homicide, his general reputation as a peaceable, law-abiding citizen in the neighborhood was good, and such error is material and prejudicial notwithstanding the evidence of three witnesses has been received that such reputation of the defendant was good for one or two years immediately preceding the homicide and no evidence to the contrary was introduced.

2. ——— *Remoteness as to Time*—*Probative Force of Evidence.*  In such a case evidence of continuously good reputation for twenty years or more, and continuing to within two to four years of the homicide, is not so remote as to raise the presumption that it has no probative value and is therefore incompetent.

3. ——— *Deposition*—*General Objection.*  General objections to a deposition as a whole are insufficient if any part of the deposition is admissible in any view of the case.  It is the duty of the party objecting to specify each question or answer upon which he desires a ruling, and to specify the particular grounds of his objection, unless he objects to the admissibility of the deposition as a whole, in which case he should specify his grounds therefor.  Such general objection does not justify the exclusion of the entire deposition because a part should be excluded.

Appeal from Geary district court; OSCAR L. MOORE, judge.  Opinion filed December 8, 1906.  Reversed.

STATEMENT.

THE defendant was arrested and tried on a charge of murder in the first degree, and was convicted of, and sentenced for, murder in the second degree.  There appears to have been but one eye-witness to the tragedy, and his evidence was not produced at the trial.  The

homicide occurred in November, 1903, and the trial in March, 1906.

The defendant admitted the killing and pleaded self-defense. His testimony as to the occurrence does not appear unreasonable, and practically the only incriminating evidence was that of a woman who appears to have been living in illicit relations with him at the time of the homicide and for about two years thereafter, at which time she became jealous over his attentions to another woman and the story which resulted in his conviction was told. Prior thereto she had maintained his innocence. In her evidence she admits bitterness and malice toward him. More than two years after the homicide her name, as a witness for the state, was, by leave of court, indorsed upon the information. The defendant applied for a continuance to enable him to procure the attendance and evidence of the eye-witness, and his application was refused. He was placed on trial a very few days thereafter. He was convicted and sentenced, and now appeals to this court.

*C. C. Coleman,* · attorney-general, for The State; *Roark & Roark,* of counsel.

*Loomis, Blair & Scandrett,* for appellant.

The opinion of the court was delivered by

SMITH, J.: The defendant in his brief makes seventy-six assignments of error, by far the greater number of which relate to the manner in which the state was allowed to introduce its evidence.

The reason is not apparent for the allowance of suggestive and leading questions to the principal witness, Mrs. Parker, or for recalling her so frequently and allowing her to reiterate statements claimed to have been made to her by the defendant, embracing as they do matters entirely irrelevant to the issue and tending only to prejudice the jury against him. The interest manifested and malice admitted by this witness against the defendant indicate that she required no leading or

suggestive question to elicit all she knew favorable to the state. Also, her manifest acumen and perspicuous expression indicate that no repetition was necessary. These matters, however, are largely within the sound discretion of the trial court, and we cannot say that discretion was abused.

Her story, although uncorroborated, and denied by the defendant, believed as it appears to have been by the jury, whose duty it is to weigh conflicting evidence, is sufficient to sustain the verdict. Yet one can hardly read it without questioning whether it is really the truth or is another illustration of the verity of the lines:

> "Heaven has no rage like love to hatred turned,
> Nor hell a fury like a woman scorned."

We pass several objections to the exclusion of evidence offered by the defendant, in which we find no reversible error. The ruling of the court, however, excluding certain of the depositions offered by the defendant to prove his character as a peaceable, law-abiding citizen prior to the time of the homicide compels a reversal of the judgment.

That a defendant on trial charged with crime has the right to offer evidence of his previous good character and disposition as a peaceable, quiet citizen for the purpose of disproving guilt, and to have such evidence considered by the jury, no longer admits of question. (1 Wig. Ev. §§ 56, 60, 197; *The State v. Douglass,* 44 Kan. 618, 26 Pac. 476; *The State v. Keefe,* 54 Kan. 197, 38 Pac. 302.) Reputation is the evidence of character, and character is not to be established by the opinions or conclusions of witnesses, nor by the personal knowledge of the witness or by particular acts or circumstances, but, in the respect involved, is proved by evidence of the general reputation which one bears in the locality where he resides as to that particular trait. The character of a man is the same in one place as in another, hence the place of residence and of the inquiry is immaterial.

A number of the depositions were offered in evidence by the defendant to prove his good character as a peaceable, law-abiding citizen. The depositions, no exceptions thereto having been filed, were all excluded on the statutory ground of incompetency and irrelevancy. The objection was made to each deposition as a whole, and not to any specific portion. It is urged that all the evidence in each deposition is remote, therefore incompetent, and is also a recital of the conclusions and personal knowledge of the witnesses, instead of testimony of the general reputation of the defendant. Whether the objection was that the evidence was too remote as to place or too remote as to time does not appear. As before indicated, remoteness as to place is immaterial; as to time, the authorities are that evidence may be too remote to be competent. No hard and fast rule is attempted to be laid down as to how far into time past the inquiry can be pursued. A reasonable time seems to be the concensus of opinion, to be determined by circumstances. Wigmore, in section 1617 of volume 2 of his new and excellent treatise on Evidence, says that on a charge of murder evidence of good reputation five years prior to the homicide is admissible, being within a time in which there is no presumption of a change of character. If the old adage, "the boy is the father of the man," be true, evidence of character even more remote might well be considered as of probative value. No authority or logical reason, we undertake to say, can be found for excluding evidence of continuously good general reputation as a peaceable, law-abiding citizen from childhood to manhood and to within two to four years of the time of the homicide.

Some of the depositions were properly excluded for the reason that they contained no evidence of general reputation, and perhaps some portions of the others should have been excluded for the same reason. However, if any part be admissible, an objection to a deposition as a whole is insufficient to challenge attention to

The State v. Simmons.

any particular defect. Much more, then, is it insufficient to require or justify the exclusion of the entire deposition. (*Ottawa University v. Parkinson,* 14 Kan. 159; *First Nat. Bank v. Rush,* 85 Fed. 539, 29 C. C. A. 333; 6 Encyc. Pl. & Pr. 588, *et seq.;* 1 Wig. Ev. § 18.)

Each of the witnesses in the depositions testified to long acquaintance with the defendant and with the neighborhood in which he had lived, at and near Junction City, Ark., until he left that state, two to four years before the homicide, according to the recollection of the different witnesses. Witness Pendleton said in his deposition: "His reputation has been that of a quiet, peaceable citizen." Price said: "I have never heard of anything against him before." Bishop said: "Never knew of any complaints against him. If his reputation had been other than a quiet, peaceable citizen I would have known it." Mahoney said: "His reputation as being a good and peaceable citizen is good." Smead, after stating that he was a lawyer, was fifty years of age, and had known defendant twenty odd years, continued: "I knew his general reputation in the neighborhood where he lived from a little boy until he left the state. He was an honest, upright, law-abiding citizen—this was his general reputation in that neighborhood. He was a quiet, unassuming, hard-working, law-abiding, young man. This was the general reputation he bore during the years I knew him."

That some of these expressions are subject to criticism is true, but mere forms of expression, where the meaning of the witness is apparent, especially where there is an opportunity for cross-examination, should not exclude testimony which is competent in its evident meaning. For instance, if there was any doubt that the witness Smead, in using the language "he was an honest, upright, law-abiding citizen—this was his general reputation in that neighborhood," meant his general reputation was that he was an honest, upright, law-abiding citizen, then the court should have admitted the evidence, and could have instructed the jury

to consider only the evidence relating to the general reputation of the defendant as a peaceable, law-abiding citizen and to disregard any personal opinion or knowledge of the witness as to the character of the defendant. That the defendant was entitled to all the favorable evidence he could procure and had at hand needs hardly to be said. The admission of the unobjectionable portions of these depositions might at least have raised a reasonable doubt in the minds of the jurors as to the guilt of the defendant, especially considering the character of the evidence for the state. If so, the defendant was prejudiced by its exclusion.

It is no answer to say that the exclusion of the depositions was not prejudicial because three men, some of whom were shown to have been engaged in an illegal business, testified that they had known the general reputation of the defendant as a peaceable citizen in Junction City, Kan., for one or two years before the homicide, and that it was good, and no evidence to the contrary was offered by the state. If evidence of former peaceable character is, as it should be, of any value in cases like this, where the evidence seems almost in a balance as to whether the homicide was justifiable or criminal, it must be apparent that there is a wide difference between maintaining such a character for twenty years and the maintaining of it for one or two years.

The judgment is reversed and the case remanded, with instructions to grant a new trial.

GREENE, MASON, PORTER, GRAVES, JJ., concurring.

JOHNSTON, C. J., BURCH, J., dissenting.