McCARTY v. LIGHT.

(Supreme Court, Appellate Division, Fourth Department. January 22, 1913.)

1. BANKRUPTCY (§ 196*)—JUDGMENT—LIEN ON REALTY.

　　Where a judgment is rendered within four months of an adjudication of bankruptcy, it becomes a lien on the bankrupt's real estate which the trustee does not elect to claim, in spite of Bankruptcy Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3450), providing that such a judgment is void, and that the property affected thereby shall pass　.

to the trustee, since, although not effective as against the trustee, or persons claiming under him, or the insolvent personally, the lien on the property is not wholly destroyed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 306–316; Dec. Dig. § 196.*]

2. BANKRUPTCY (§ 150*)—TRUSTEE IN BANKRUPTCY—TITLE TO LAND.

Although the title to land passes to the trustee in bankruptcy by the proceedings in bankruptcy, if he so elects, he need not accept it, if in his opinion it is worthless or will be unprofitable.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 228; Dec. Dig. § 150.*]

3. BANKRUPTCY (§ 433*)—SECURED CLAIMS—JUDGMENT LIENS.

Where a judgment creditor proved his claim against the estate of a bankrupt, but got nothing thereon, and there was nothing to show that he had surrendered or waived the security of the lien on land not sold by the trustee, such lien was not affected by the discharge in bankruptcy of the judgment debtor, under Bankruptcy Act July 1, 1898, c. 541, § 57g, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1911, p. 1504]), allowing the filing of secured claims without losing the security.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 808–823; Dec. Dig. § 433.*]

McLennan, P. J., and Lambert, J., dissenting.

Appeal from Special Term, Monroe County.

Action by Edward McCarty against Arthur S. Light. Judgment for plaintiff, and from an order granting leave to issue execution, the defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

P. Cameron Shutt, of Rochester, for appellant.
Harry Otis Poole, of Rochester, for respondent.

KRUSE, J. The order from which the appeal is taken permits an execution to be issued upon the judgment recovered by the plaintiff against the defendant, and the question is whether, in view of the defendant's discharge in bankruptcy and the proving in the bankruptcy proceedings of the debt upon which the judgment was recovered in the bankruptcy proceedings, the lien of the judgment survived, notwithstanding it was recovered within four months before the adjudication of the defendant as a bankrupt in the federal court. The Special Term held that the lien of the judgment survived and granted leave to issue an execution, and from the order entered thereon the defendant appeals.

It appears that the judgment was recovered on the 23d day of September, 1902, on a promissory note made by the defendant to the plaintiff, and that the judgment was docketed in Monroe county clerk's office on that day; an execution was issued to the sheriff of Monroe county, November 13, 1902, and returned wholly unsatisfied; that at the time of the entering of said judgment, the defendant was the owner of an undivided interest in certain real estate situate in that county, upon which the judgment became a lien. The plaintiff in the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judgment having died, Edward A. McCarty was appointed the executor of the will by the probate court of Saginaw county, state of Michigan, and thereafter ancillary letters testamentary were issued to him by the surrogate of Monroe county. The executor makes the application for leave to issue the execution.

On the 4th day of December, 1902, the judgment debtor filed a petition in bankruptcy, and on that day was adjudicated a bankrupt by the District Court of the United States for the Western District of New York, and thereafter, and on the 29th day of December, 1902, filed a supplementary petition stating that at the time he filed the original petition he was the owner of an undivided one-fifth interest in said real estate. The plaintiff's claim was included in the schedule of the defendant in the bankruptcy proceeding. The defendant states in his affidavit that it was a debt provable in the bankruptcy court; that the plaintiff had due notice of the bankruptcy proceedings, and that his claim was duly proven as a debt against the bankrupt in the bankruptcy proceedings; that a trustee was appointed of the defendant's property; that the trustee qualified, entered upon the discharge of his duties, and thereafter he was discharged; and that on December 1, 1904, the defendant was duly discharged from all debts and claims provable in bankruptcy. A copy of the order granting the discharge in bankruptcy is contained in the record, and is the only paper in the bankruptcy proceedings of which a copy appears to have been presented upon this application. The other facts referred to are made to appear by affidavit.

The order of discharge provides that a discharge be and the same is granted to the bankrupt, discharging and releasing him from all his debts provable in bankruptcy, except only such as are exempt by the provisions of the Bankruptcy Act of 1898, and directs that a formal discharge be signed, issued, and delivered to the bankrupt.

It appears by the affidavit of the attorney who makes the application for leave to issue the execution (who was also the trustee in bankruptcy and the attorney who obtained the judgment) that the interest of the bankrupt in the real estate was not sold in the bankruptcy proceedings, and it is further stated in the affidavit that the judgment debtor, the bankrupt, was discharged in bankruptcy proceedings while still the owner of the interest. There is no explanation why the interest of the bankrupt was not sold, nor does it appear in any way what was the amount of his indebtedness, the value of his estate, the amount realized, or the amount paid upon the indebtedness, except what may be inferred from the statement in the affidavit of the attorney that no part of the judgment has been paid and that the same still remains unsatisfied.

It is also stated in the affidavit that the judgment is still a lien on the real property and interests owned by the debtor in accordance with section 150 of the Debtor and Creditor Law (Consol. Laws 1909, c. 12) and section 1268 of the Code of Civil Procedure, which provides that, where the judgment was a lien on real property owned by the bankrupt prior to the time he was adjudged a bankrupt, the lien thereof upon said real estate shall not be affected by said order and may

be enforced. It is further stated that, while the judgment was still a lien upon the interest in said real estate, the defendant conveyed the same to his wife by quitclaim deed, February 15, 1910, which is recorded in Monroe county clerk's office, and that the wife still retains the record title to the property, subject to the lien of the judgment.

[1] The defendant states in his affidavit that at the time the judgment was obtained he was insolvent, and contends that the judgment, having been obtained within four months prior to the filing of his petition in bankruptcy, is void not only as to the trustee in bankruptcy, but also as to him, the bankrupt judgment debtor. While section 67f of the federal Bankrupt Law provides generally that such a judgment is void, and that the property affected thereby shall pass to the trustee as a part of the estate, unless the court shall order the lien preserved for the benefit of the estate, such a judgment is good, and the lien thereof remains effective, except as against the trustee in bankruptcy, or person or persons claiming under or through him. Frazee v. Nelson, 179 Mass. 456, 61 N. E. 40, 88 Am. St. Rep. 391, decided in 1901; McKenney v. Cheney, 118 Ga. 387, 45 S. E. 433, decided in 1902; Rochester Lumber Co. v. Locke, 72 N. H. 22, 54 Atl. 705, decided in 1903; 1 Loveland on Bankruptcy (4th Ed.) § 438. The discharge in bankruptcy affects only the defendant's personal liability upon the debt; not the lien of the judgment recovered upon the debt. 2 Loveland on Bankruptcy (4th Ed.) §§ 742, 747.

[2] While the title to the land would pass to the trustee in bankruptcy by the proceedings in bankruptcy, if he elected to take the land, he was not required to accept it if in his opinion it was worthless or would be unprofitable for him to take the same. Indeed, in such a case it was his duty not to accept it. Matter of Cogley (D. C.) 107 Fed. 73. Whether the trustee concluded that the bankrupt was solvent at the time the judgment was entered, and the lien valid, or, if invalid. that the land was so heavily incumbered as to make it unprofitable for him to take it, we do not know. There is nothing disclosed by the record which throws any light upon that question; and perhaps that is not important here. It is a sufficient answer to the appellant's contention that the trustee in bankruptcy elected not to take the property and has not challenged the validity of the judgment, or taken any proceedings to avoid the lien thereof.

[3] But it is now said that the plaintiff, by proving his claim in bankruptcy, elected to abandon his security. No such claim was made at Special Term or upon the argument before us, and I think the facts stated in the record are insufficient to present that question. While it appears that the adjudication in bankruptcy against the defendant was made in December, 1902, the proceedings in bankruptcy were not terminated until December, 1904, and it does not appear when the claim was proven, nor the form in which it was presented or allowed. Under the provisions of section 57e of the Bankruptcy Act, as it existed in 1902, the plaintiff, although his claim was secured, had the right to participate in the proceedings at creditors' meetings held prior to the determination of the value of his security, but his claim could only be allowed for such sum owing over and above the value of his secu-

rity; and under section 57h provision is made for determining the value of the security and crediting such value upon the claim, directing a dividend to be paid upon the unpaid balance. In 1903 the Bankruptcy Act was amended; but the amendments, I think, made the right of the secured creditor to file and prove a claim like this, without losing his security, more definite and certain than under the original act. Section 57g, as amended in 1903. If the defendant desired to present that question, he should have made the facts appear which had the effect to discharge the plaintiff's lien or would make it inequitable for him now to enforce the same. Cook v. Farrington, 104 Mass. 212.

The proposition as contended for by the defendant amounts to this: That he may include in his schedule of assets property subject to the lien of the judgment which the trustee in bankruptcy refuses to take, and upon the determination of the bankruptcy proceedings and his discharge, the property comes back to him, with not only his personal liability extinguished, but the property freed from the lien of the judgment, without the payment of anything thereon to the judgment creditor. I am of the opinion, however, that since the property was never subjected by the trustee to the jurisdiction of the bankruptcy court, the lien thereon was not affected thereby, and that the plaintiff may enforce the same against the property in question under the state law. Debtor and Creditor Law, § 150; Code of Civil Procedure, § 1268.

I think the order should be affirmed, with $10 costs and disbursements. All concur, FOOTE, J., in a separate memorandum, except McLENNAN, P. J., and LAMBERT, J., who dissent in an opinion by LAMBERT, J.

FOOTE, J. (concurring for affirmance). While the language of section 67f of the Bankrupt Act plainly makes void judgments recovered within four months prior to the filing of the petition, still I think this section must be construed with reference to the object intended to be accomplished by it; that is to say, with reference to the proper and equal distribution of the estate among the creditors. Loveland in his work on Bankruptcy (4th Ed.) § 438, says:

"Section 67f does not avoid the levies and liens therein referred to against all the world, but only against the trustee in bankruptcy and those claiming under him, so that the property may pass to and be distributed by him among the creditors of the bankrupt."

For this he cites a number of cases, including those referred to in the opinion of Mr. Justice KRUSE. It is for this reason that liens acquired within four months upon exempt property hold good, notwithstanding the provisions of section 67f. As to such liens, Loveland, at section 427, says:

"A lien created by legal proceedings, as by a levy of execution, attachment, garnishment, or a judgment, within four months of bankruptcy, remains in force upon so much of the property as is exempt from those proceedings. The reason for this is that section 67f, annulling liens obtained by legal proceedings, deals with liens on property which passes to the trustee for the benefit of the creditors of the bankrupt, but does not affect liens on property, which is not a part of the estate."

For this the author cites a number of authorities, among others, In re Driggs (D. C.) 171 Fed. 897, where Judge Hand, in the Southern district of New York, held that creditors who had levied upon a bankrupt's wages only four days before the petition in bankruptcy could not be restrained from proceeding to collect such part of the wages as were exempt property not passing to the trustee in bankruptcy.

The case in the Circuit Court of Appeals for the Ninth Circuit of In re Forbes, 186 Fed. 79, 108 C. C. A. 191, is not an authority to the contrary. In that case, the bankrupt's homestead property came into the custody of the trustee in bankruptcy, and it became necessary for him to convert it into money, because the property was far more valuable than the $2,500 in value, which was the limit of the exemption allowed as a homestead under the Arizona statute, and it appeared that the attachment in that case was levied upon this homestead property before the bankrupt had selected it as a homestead. And in Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, the Supreme Court of the United States directed the bankrupt's discharge to be withheld in order to permit a creditor to proceed in the state court to collect his debt out of exempt property, as to which the creditor held a waiver of exemption, and in which the general creditors were not interested. See Loveland's discussion of these questions. Volume 1, pp. 883–886.

As to the second question referred to in Mr. Justice LAMBERT'S opinion, namely, that by proving a claim in bankruptcy, the judgment creditor waived the lien of his judgment, I think we cannot so hold in this case. Defendant had the affirmative of showing, in answer to plaintiff's motion, that the lien had been discharged. The Bankrupt Act provides a method of proving secured debts, so as to enable the creditor to retain his security and prove for the balance of the debt over and above the amount of the security. The Supreme Court has prescribed forms in proving claims in bankruptcy. The only practical difference between the form of proof of secured and unsecured debts is that in case of unsecured debts the creditor should state that he "has not * * * had or received any manner of security for said debt whatever," and, for a secured debt, "and that the only securities held by this deponent for said debt are the following." Defendant's affidavit in opposition to the motion below states:

"And plaintiff's said claim herein was duly proven as a debt against said bankrupt in said bankruptcy proceedings, * *. * and that the claim of plaintiff herein was one of the debts proven against deponent in said bankruptcy proceedings, and discharged by operation thereof."

This statement may have been entirely true, and still there may have been no waiver; for, if the debt was proved as a secured debt, there would be no waiver. To sustain the burden resting upon him, defendant should have shown that the debt was proved as an unsecured debt.

I doubt whether it was intended that questions such as are pre-

sented here should be determined upon a motion under section 1378 of the Code for leave to issue an execution. In this case, when the motion was made, the 10 years was about to expire after which the judgment would cease to be a lien upon the land which defendant had already conveyed to his wife. Under those circumstances, plaintiff's rights, if any he had, could only be preserved by granting the motion for leave to issue execution, leaving the defendant to assert his supposed rights under his discharge in bankruptcy, either by motion to discharge the judgment because of the discharge in bankruptcy, or by action to restrain plaintiff from proceeding to enforce the judgment. At all events, if it were proper to litigate such questions as this at Special Term on a motion for leave to issue execution, certainly defendant should have presented to the Special Term such parts of the proceedings in bankruptcy and other facts as were necessary to put the court in possession of all the facts. Defendant may now bring his action to protect himself, if he has that right, while, if leave to issue execution is denied, plaintiff's lien cannot be restored, though it be found on fuller disclosure of the facts that the lien has not been waived.

For these reasons, it seems to me the order should be affirmed.

LAMBERT, J. (dissenting). The major facts involved upon this appeal are sufficiently stated in the opinion of Justice KRUSE. The Bankruptcy Act of 1898 (section 67f) furnishes ample reason for the reversal of the order. By that section it is provided:

"That all judgments * * * obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void, in case he is adjudged a bankrupt, and the property affected by the levy, judgment, * * * shall be deemed wholly discharged and released from the same and shall pass to the trustee, as a part of the estate. * * *"

This statute provides three prerequisites to its operation. The judgment must be against a debtor, insolvent at the time of its rendering. The petition in bankruptcy must have been filed within the four months thereafter. The adjudication of bankruptcy must follow. When these elements are present, their legal effect is plain. The judgment is dissolved, ipso facto, as of the time of its rendition. The United States Supreme Court so declared the effect of this statute in the following words:

"This nullity and invalidity relate back to the time of the rendition of the judgment. The language of the statute is not 'when,' but 'in case, he is adjudged a bankrupt,' and the lien obtained through these legal proceedings was by the adjudication rendered null and void from its inception." Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555.

This court has also had occasion to pass upon this section of the Bankruptcy Act, and its conclusions harmonize with the foregoing. Nat. Bank & Loan Co. v. Spencer, 53 App. Div. 547, 65 N. Y. Supp. 1001; De Graff v. Lang, 92 App. Div. 564, 87 N. Y. Supp. 78. If the rule of interpretation, announced in these cases is applicable to the facts here, then there was no lien remaining under this judgment, upon

which the saving clause of section 150 of the Debtor and Creditor Law might operate. The lien of the judgment having been destroyed by the Bankruptcy Act, the state enactment is ineffectual to reinstate it.

It is suggested in the prevailing opinion that the rule established by the cases cited is one for the benefit of creditors, and can only be asserted by the trustee and those claiming through or under him. I cannot accede to this proposition as of unvarying application. But, assuming it to be true, it does not, in my opinion, permit the respondent to retain the order involved upon this appeal. The real property, upon which it is claimed this judgment was a lien, was scheduled by the bankrupt as a part of his estate, and he in fact then owned the title. By the clear provisions of section 67f, his title vested in the trustee as of the date of adjudication, and equally clear is it that it vested, freed from the lien of the judgment. This is made so by the provision of that section, "that the property" shall be deemed wholly discharged from such lien and pass to the trustee as a part of the estate. The statute, above quoted, distinctly so provides. Upon the appointment of the trustee, then the title, by operation of law, left the bankrupt and vested in the trustee, free from the lien of the judgment.

It is well settled law that a trustee is at liberty to refuse to administer property so vesting, if its administration would prove disadvantageous to the estate he represents. First Nat. Bank v. Lasater, 196 U. S. 115, 25 Sup. Ct. 206, 49 L. Ed. 408; American File Co. v. Garrett, 110 U. S. 288, 295, 4 Sup. Ct. 90, 28 L. Ed. 149; Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 104, 35 L. Ed. 915; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Dushane v. Beall, 161 U. S. 513, 16 Sup. Ct. 637, 40 L. Ed. 791. Those and other cases that might be cited decide that, in case the trustee elects not to administer the property, the title reverts to the bankrupt by operation of law, and that such election may be inferred from circumstances. The fact is conceded in the record of this appeal that the trustee in bankruptcy did not administer the real property in question, and we may reasonably conclude that his failure to do so resulted from a determination by him that to administer it would prove unprofitable to the estate. The reasonableness of his conclusion not to administer it is not open to question here, as a means for its review is provided in the bankruptcy court. It follows that by operation of law the title thereupon passed back to the bankrupt. Unless the trustee did make such a determination, and unless such was its effect, then there is now no title in the appellant to be reached by the execution. It is thus made certain that the title owned by him, at the conclusion of the bankruptcy proceedings, was a title that he acquired from and through the trustee. Having succeeded to the title of the trustee, he has a privity of title with the trustee, and is in a position to assert any right that the trustee might assert with reference to such title. The privity arises from the succession of title. Smith v. Reich, 80 Hun, 287, 30 N. Y. Supp. 167, affirmed 151 N. Y. 642, 45 N. E. 1134.

As has been seen, the title vested in the trustee free from the lien of the judgment, and I can find no provision of law, statutory or oth-

erwise, reviving such lien upon the transition of the title back to the bankrupt. Undoubtedly a construction of this section of the Bankruptcy Act is proper, and even required, which removes from its operation liens upon property not reached by the bankruptcy law and which that court cannot administer. Such a construction is essential to a recognition of the property rights in the bankrupt not reached through and by the Bankruptcy Act, and leaves such property and the liens attendant thereon to be administered by the state courts, unfettered by the bankruptcy proceedings. Such a construction is recognized by Mr. Loveland in his work on Bankruptcy (4th Edition, § 438), and the cases from foreign jurisdictions, which he cites to sustain that construction, so hold. With the doctrine of these cases I have no controversy as to the facts there involved. Those facts, however, do not quadrate with those of this case. Here the judgment debtor sought the bankruptcy court to be relieved from his debt, and turned this particular property over to that court for administration by it. Here the judgment creditor also invoked the aid of that court for the collection of his debt, by proving his claim, and submitted it and himself to the jurisdiction of that court. Here the property was of a character which permitted its administration in that court, and it actually passed to the trustee for such administration. With the property, the judgment debt, and both parties all in that court and within its jurisdiction, we must assume that their respective rights, which they were there asserting, were fully administered, and no right survived to be enforced in the state courts. If the proceedings had in that court were not complete in the adjustment of their rights, then the burden was upon the moving party in this application to make such fact appear. That he has failed to do.

It appears from the record that in the bankruptcy proceeding the judgment creditor proved the judgment "as a debt" against the bankrupt. This, it would seem, justifies the conclusion that he proved such as an unsecured claim. To assume otherwise requires the inference that he proved it, not only as a "debt," but also as a lien. I find no intimation in the record that any claim was made there that the claim was one upon a lien. If in fact the claim was one upon a lien, the respondent should have made such fact to appear, to escape the conclusion that it was not. Assuming, therefore, as I think we must, that the claim was proven as an unsecured claim, such action effectually bars the relief sought here by the respondent. This is equally true if we assume that a lien existed upon which he might have proven a secured claim. There would then have been two courses of action open to him. He might rely upon such lien and look to the property for the satisfaction of his debt, or he might file an unsecured claim and look to dividends for reimbursement. He could not do both, for the two positions are made inconsistent by the Bankruptcy Act. By section 56b of that act, the holder of a secured claim is debarred from voting at creditors' meetings. By sections 57e and 57h, the holder of such a claim is required either to realize upon his security or to appraise its value, to the end that it may be determined what proportion of the claim is not protected by the security. The official forms

in bankruptcy have practically the effect of statutory enactments, and by such the creditor, in filing his claim, is required to specify whether his claim be secured, and, if so, to identify its security.  Substantial rights to all creditors are affected by these provisions.  It is only the unsecured creditors who participate in dividends, and to allow a secured creditor to receive dividends upon the full amount of his claim, and then to realize upon his security, would be manifestly unjust and inequitable.

Nor do I see that the status of the respondent is affected through the failure of the estate to pay dividends.  The judgment debtor voluntarily assumed a position which entitled him to receive dividends, if any were paid.  His claim to be so entitled was repugnant to any claim of security in his hands.  With the two inconsistent positions presented, he was required to assume one position or the other, and his election to take the stand of an unsecured creditor was an abandonment of all claim that he had any security.  This doctrine is recognized in the case of Ansonia Co. v. Babbitt, 74 N. Y. 395, and, as was there stated, the place for him to correct any position he may have misguidedly assumed is not in this court.  He stands here, as he did there, an unsecured creditor.

It follows that the order appealed from should be reversed, with costs.