ORMAN P. DOW *vs.* RALPH BRADLEY.

Piscataquis.   Opinion February 22, 1913.

*Bankruptcy. Equitable Interest. Equity of Redemption. Extension of Redemption. Forclosure. Innocent Third Party. Mortgage. Parol Agreement to Extend. Right to Redeem. Statute of Frauds. Trustee.*

1. An action for money had and received is maintainable when the defendant has in his possession money which in equity and good conscience belongs to the plaintiff.
2. The right to redeem mortgaged real estate may be kept open by the express agreement of the parties, or by facts and circumstances from which an agreement may be satisfactorily inferred when it would be foreclosed were it not for such agreement.
3. It is undoubtedly the law that an agreement between mortgagee and mortgagor, or those holding their respective interests to extend the time of redemption, although not in writing, nor supported by any other consideration than the promise of the redemptioner, when such an agreement has been acted upon so far that the parties cannot be placed in statu quo is not within the statute of frauds and is binding upon the parties.
4. A verbal contract to extend the equity of redemption of a mortgage of real estate, entered into by the mortgagee with one who, at the time has no legal or equitable interest in that equity of redemption, would be within the statute of frauds and not enforceable unless in writing and supported

by a valuable consideration.

5. Under the provisions of the bankrupt act, the trustee thereunder is vested in a qualified sense, with all the assets of the bankrupt, yet it is the well recognized doctrine that he may decline to take such property as he deems burdensome and worthless.

6. Such items of estate, corporeal or incorporeal, as the assignee declines to appropriate or utilize, remains the property of the bankrupt, subject always to the superior right and title of the assignee.

On report. Judgment for plaintiff. Damages to be assessed at nisi prius.

This is an action of assumpsit with two counts in special assumpsit and a count for money had and received to recover the sum of five hundred dollars. The defendant held a mortgage on the plaintiff's farm, situated in Sangerville, in the county of Piscataquis, to secure the payment of nine hundred dollars, dated November 16, 1903. On the 30th day of June, 1910, defendant commenced proceedings to foreclose said mortgage, the equity of redemption of which would expire on June 30, 1911. In April, 1911, the plaintiff claims that the defendant verbally agreed with the plaintiff to give him a reasonable time, after the date when the equity of redemption would otherwise expire to pay the amount due on the mortgage. The defendant sold the farm on July 1, 1911, for $1500, and the plaintiff sues to recover the difference between the amount due on the mortgage and the fifteen hundred dollars which defendant received for said farm. Plea, the general issue. At the conclusion of evidence, the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Hudson & Hudson,* for plaintiff.

*C. W. Hayes,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

KING, J. This case comes up on report. On June 30, 1910, the defendant began foreclosure proceedings, by publication, of a real estate mortgage given to him by the plaintiff, the equity of redemption of which would expire on June 30, 1911. In April, 1911, the

plaintiff solicited of the defendant an extension of the equity of redemption, and we think the evidence fully justifies the conclusion that the defendant then verbally agreed with the plaintiff to give him a reasonable time, after the date when the equity of redemption would otherwise expire, to pay the amount due under the mortgage. That agreement, however, the defendant violated by a sale and conveyance of the property to an innocent third party on the morning of July 1st, 1911. The Plaintiff claims that the defendant sold the property for five hundred dollars in excess of the amount then due under the mortgage, and this action of assumpsit, containing a count for money had and received, is brought to recover such excess.

In the very recent case, *Dresser* v. *Kronberg,* 108 Maine, 423, this court again stated the well established doctrine, that the action for money had and received "is comprehensive in its reach and scope," and "though the form of the procedure is in law it is equitable in spirit and purpose and the substantial justice which it promotes renders it favored of the courts." And it is familiar law that an action for money had and received is maintainable when the defendant has in his possession money which in equity and good conscience belongs to the plaintiff. *Dresser* v. *Kronberg,* supra; *Pease* v. *Bamford,* 96 Maine, 23. The fundamental question, therefore, here presented is, whether this doctrine is applicable in the case at bar? Is it satisfactorily established that the defendant has in his possession money which in equity and good conscience belongs to the plaintiff?

If at the time the defendant sold the property, the right to redeem the same belonged to the plaintiff, then it would seem to follow as a logical conclusion that so much of the proceeds of the sale as is shown to be in excess of the defendant's mortgage claim, and his expenses, is money in his hands which in equity and good conscience belongs to the plaintiff, because it was received for his interest in the property which the defendant wrongfully sold.

The right to redeem mortgaged real estate may be kept open by the express agreement of the parties, or by facts and circumstances from which an agreement may be satisfactorily inferred, when it would be foreclosed were it not for such agreement. *Fisher* v.

*Shaw,* 42 Maine, 32, 39; *Chase* v. *McLellan,* 49 Maine, 375; *Stetson* v. *Everett,* 59 Maine, 376; *Brown* v. *Lawton,* 87 Maine, 83.

And it is undoubtedly the law that an agreement between mortgagee and mortgagor, or those holding their respective interests to extend the time of redemption, although not in writing, nor supported by any other consideration than the promise of the redemptioner, when such an agreement has been acted upon so far that the parties cannot be placed in statu quo, is not within the statute of frauds, and is binding upon the parties. If within the period of extension the mortgage debt is paid, or tendered, it has the same effect as if done prior to the time the equity would have otherwise expired. *Brown* v. *Lawton,* supra.

In *Schroeder* v. *Young,* 161 U. S., 334, 344, the Supreme Court of the United States, speaking by Mr. Justice Brown, say: "Defendant relies mainly upon the fact that the statutory period of redemption was allowed to expire before this bill was filed, but the court below found in this connection that before the time had expired to redeem the property, the plaintiff was told by the defendant Stephens that he would not be pushed, that the statutory time to redeem would not be insisted upon, and that the plaintiff believed and relied upon such assurance. Under such circumstances the courts have held with great unaminity that the purchaser is estopped to insist upon the statutory period, notwithstanding the assurances were not in writing and were made without consideration, upon the ground that the debtor was lulled into a false security."

The learned counsel for the defendant does not question this principle, that a verbal agreement to extend the time for the redemption of a mortgage is not within the statute of frauds, but he contends that if such a verbal contract is made between the mortgagee and one at the time is not the owner of the equity of redemption, such contract is within the statute, and is not enforceable unless in writing and supported by a valuable consideration. And he claims that at the time the defendant agreed with the plaintiff to extend the equity, the plaintiff had no right or title in the mortgaged premises, having been divested thereof by his bankruptcy proceedings instituted in 1910, under which a trustee was chosen and settled his estate.

We think the proposition of law which the defendant invokes is correct. We have no doubt that a verbal contract to extend the equity of redemption of a mortgage of real estate, entered into by the mortgagee with one who at the time has no legal or equitable interest in that equity of redemption, would be within the statute of frauds, and not enforceable unless in writing and supported by a valuable consideration. But we do not think that the defendant's contention, that the plaintiff had no such interest in this equity of redemption at the time the agreement for its extension was made with him, is tenable under the facts disclosed in this case.

While, under the provisions of the bankrupt act the trustee thereunder is undoubtedly vested, in a qualified sense, with all the assets of the bankrupt, yet it is the well recognized doctrine that he may decline to take such property as he deems burdensome and worthless. This doctrine was fully discussed and laid down in *Lancey* v. *Foss,* 88 Maine, 215, 218. It was there said:

"The assignee of a living bankrupt, however, may decline to take or interfere with such property as he deems onerous or worthless. The property so rejected by the assignee does not thereby become derelict, to vest in the first appropriator. The rights and obligations which the assignee declines to enforce, or notice, do not thereby vanish into nothingness.

"Such items of estate, corporeal or incorporeal, as the assignee declines to appropriate or utilize, remain the property of the bankrupt, subject always to the superior right and title of the assignee. Notwithstanding the adjudication and assignment under the bankrupt act, there is left in the bankrupt a right which makes a title good against all the world except his assignee and creditors. These may appropriate the entire title and interest, and so divest the bankrupt completely; but what they decline to appropriate remains with the bankrupt. The title does not fall to the ground between the two. If the assignee or creditors will not take it, no one else can appropriate it. The bankrupt can defend or enforce it against all others." See also *Fleming* v. *Courtenay,* 98 Maine, 401.

In the case at bar it conclusively appears that the trustee, after making an unsuccessful effort to find some available value in the bankrupt's equity to redeem this real estate, decided that it was worthless and elected not to take it. In his petition to have his

final account allowed; and to be discharged, filed June 20, 1911, he alleged that he "was unable to obtain an offer for the equity" in the real estate, and asked authority to disclaim it. Such authority was not a pre-requisite to his election to abandon it; it was rather a precautionary matter of practice, so that he might have a formal ratification by the court of his election not to take it. He evidently found that it was worthless as an asset soon after he began the settlement of the estate, for it appears that in November, 1910, he wrote the defendant in a futile effort to get an offer for this equity from him, and stated in that letter that the party who held the second mortgage on the same property did not want anything to do with it. It may be a reasonable and fair inference that the trustee decided not to take this equity of redemption as an asset of the bankrupt's estate as soon as he found it to be worthless to him, which was doubtless prior to April, 1911. But whether his decision not to take it was made before or after the agreement for extension was made, is of no material consequence. This right of redemption, notwithstanding the bankruptcy proceedings, remained the property of the bankrupt, the plaintiff, subject always to the superior right and title of the trustee to take it. The plaintiff's title to it was good against all the world except his trustee and creditors. *Lancey* v. *Foss,* supra. And in fact the trustee expressly elected not to take it, because it was worthless to him, and did not take it. The plaintiff, therefore, was not a stranger to the title to the equity or redemption at the time the defendant agreed with him to extend it; on the other hand, he was the owner of it, subject only to the superior right in his trustee in bankruptcy to take and appropriate it as an asset of his estate, which right, however, the trustee abandoned.

It is further contended by the defendant that the plaintiff's only remedy, if he has any, is in equity. He claims that if a valid contract to extend the time of redemption was made, then the plaintiff's right to redeem still existed notwithstanding the defendant had sold the property. It may be conceded that the plaintiff might have brought a bill in equity to redeem, under which, the property having been previously sold by the defendant, the only judgment recoverable would have been for damages. But why should he be limited to an equity proceeding? The procedure in equity would have

afforded him no more efficient remedy than this action at law. He seeks only a judgment against the defendant for the payment of money. The right he contends for will be fully secured to him by such judgment. He does not ask for, and does not need, such peculiar and special relief as a court of equity can only afford.

We think the plaintiff's action at law, for money had and received, is appropriate and maintainable under the facts of this case. We have found that the plaintiff was the owner of the equity of redemption at the time the defendant sold the mortgaged property. It was therefore the defendant's duty, after deducting from the proceeds of the sale the amount of his mortgage debt, with the costs and expenses of the sale, to pay the surplus remaining in his hands to the plaintiff. Such surplus belonged to the plaintiff as the proceeds of the sale of his interest in the property, and the defendant is liable to him for it in the ordinary action for money had and received. *Cook* v. *Basley,* 123 Mass., 396; *Mattel* v. *Conant,* 156 Mass., 418; *Knowles* v. *Sullivan,* 182 Mass., 318.

The only remaining question to be determined is the amount of the surplus of the proceeds of the sale remaining in the defendant's hands, after the payment of his mortgage debt and his expenses of the sale. From a careful examination of the evidence contained in the report we are of the opinion that there is not sufficient data presented from which the court can safely determine this question, and that the case should be remanded to nisi prius for the determination of the amount of the damages only. Accordingly the entry will be,

> *Judgment for the plaintiff.*
> *Damages to be assessed at nisi prius.*