Argued February 11; modified March 17; rehearing denied
April 14, 1936

# CALIFORNIA JOINT STOCK LAND BANK OF SAN FRANCISCO *v.* GORE ET AL.

(55 P. (2d) 1118)

*A. E. Clark,* of Portland (Clark & Clark and R. R. Bullivant, all of Portland, on the brief), for appellant.

No appearance for respondent.

RAND, J. The defendants, W. H. Gore and Sophenia J. Ish Gore, are husband and wife and together they owned and operated a farm in Jackson county, each individually holding title to a different portion thereof in severalty. On May 2, 1927, they borrowed from plaintiff the sum of $66,000, and jointly executed two promissory notes, each for the sum of $33,000. To secure the payment thereof, they jointly executed two mortgages, giving, as security for the payment of one of said notes, that part of the land held by W. H. Gore and, as security for the other, that part held by Mrs. Gore. They failed to pay certain of the installments as stipulated in the mortgage and also failed to pay the taxes levied and assessed against the land as provided in the mortgages. While so in default and on May 23, 1934, plaintiff brought a separate suit to foreclose each mortgage and on July 24, 1934, obtained a decree of foreclosure and order of sale in each suit.

Executions were issued on each of said decrees but, before a sale thereunder could be had, the defendants filed their petition in bankruptcy and obtained an order of the bankruptcy court enjoining both sales. Later, and on November 10, 1934, said defendants filed an amended petition in bankruptcy under the original Frazier-Lemke Act and were adjudicated bankrupt on the same day. After the Frazier-Lemke Act had been declared unconstitutional in *Louisville Joint Stock Land Bank v. Radford*, 295 U. S. 555, the orders enjoining the sale of the mortgaged premises were vacated and set aside and shortly thereafter plaintiff caused another execution to be issued upon each of said decrees and, pursuant thereto and on July 15, 1935, the properties covered by said mortgages were separately sold to the plaintiff, it being the highest and best bidder therefor. For that part of the mortgaged land belonging to W. H. Gore, plaintiff bid the sum of $38,000 and, for that part belonging to Mrs. Gore, it bid the sum of $37,100, neither of said bids being for the entire amount due under either of said mortgages.

At the time of the sale, the unpaid taxes upon the combined properties amounted to some $15,000 and constituted a first lien upon the lands, said bids being made subject to said tax lien. After the sheriff's return of said sales had been made and filed in the court below, the defendants, W. H. Gore and wife, and P. M. Janney, the trustee in bankruptcy of the Gores, jointly filed objections to the confirmation of said sales and thereafter and on October 1, 1935, after a hearing in which P. M. Janney withdrew all objections to the confirmation of the sale upon his part as trustee in bankruptcy of the Gores, the court sustained said objections and refused to confirm either sale and ordered a resale

of the mortgaged property. In its order or decree vacating the sales, the court fixed as a minimum or upset price at which the mortgaged properties could be resold the "amount which may be owing upon such said judgment and decree of the plaintiff, including accrued interest thereon, at the time of any sale which may hereafter be had, together with the amount of taxes paid by the plaintiff subsequent to said decree, together with accrued interest thereon, together with the costs and expenses of such said sale", and also decreed "that unless an amount equal to or in excess of said upset price be bid at any sale had upon execution issued upon such said judgment and decree, such bid should be rejected and the sheriff should not make any sale of the property, that any sale at any less figure should not be confirmed, and the same should be set aside, rendered nugatory and held void in all things", and also decreed that the plaintiff "shall have no right of possession of said premises under and by virtue of such foreclosure sale heretofore held herein and by this said order and decree vacated, annulled and set aside".

From each of these two orders and decrees, the plaintiff has separately appealed but, by stipulation of the parties, these appeals were consolidated and heard together and, since the questions on each appeal are identical, those questions will all now be passed upon and decided.

The plaintiff contends, first, that the trial court, on the showing made, had no authority, under the statute, to deny confirmation and order a resale; second, that it had no authority to fix any minimum or upset price at which the property should be resold; and, third, it had no authority to deprive plaintiff, as pur-

chaser, of the right to the possession of the mortgaged property pending a resale, after it had been shown that none of the mortgaged property was in the possession of a tenant holding under an unexpired lease.

In passing upon the objections to the confirmation, the trial court first computed the combined amount due plaintiff from the defendants on October 1, 1935, the date when the orders appealed from were entered, and found that, after making all proper deductions, the amount then due was approximately the sum of $84,461.36, and that, if the sales were confirmed, the plaintiff would be entitled to a deficiency judgment for something over $9,000. This computation did not include the taxes then unpaid on the mortgaged property, amounting to approximately $8,776.09, not including any interest or penalties thereon, all of which were prior to the lien of plaintiff's mortgages.

In passing upon said objections, the court, in its orders and decrees, found as follows:

"It appearing to the court and it does hereby find that the reasonable value of the real property of said defendants, Gore, which was sold at said foreclosure sale, at the time of said sale held on execution was and now is substantially greater than the amount of plaintiff's judgment in this said cause, together with accrued interest thereon, and unpaid taxes levied and assessed against said premises at the date of said judgment and decree, together with accrued interest thereon, and that the plaintiff at said foreclosure sale paid less than the amount due and owing upon its said judgment, plus any taxes that might have been paid by it, together with accrued interest thereon, thereby securing a deficiency judgment against the defendants Gore.

"And it further appearing to the court and the court does so find that at such said foreclosure sale the plaintiff was the only bidder for said property and

that by reason of the general economic depression now existing the market for real estate in this community to a more or less degree has been destroyed, and that the great value of this said property, together with the present economic conditions prevailing in the country as a whole and in this community as well, preclude the establishment of a fair price by competitive bidding alone, and it appearing to the court and it does further find that where there is no competitive bidding a reasonable price cannot be obtained and that the amount bid at the sale by the plaintiff is not in any particular a fair indication of the value of said property.

"And it further appearing to the court and the court does so find that the amount bid at said sale by the plaintiff is inadequate and that the value of the property is greatly in excess of the amount due the plaintiff upon its said judgment and decree, together with taxes which have been levied and assessed against said property, and which were unpaid at the time of said judgment and decree, together with accrued interest thereon, and that it would be and is unfair and inequitable to accept a bid or permit a sale of such valuable property for an amount less than the amount of plaintiff's judgment and accrued interest thereon, and the amount of the taxes paid by the plaintiff, together with accrued interest thereon, and thereby permit plaintiff to secure a deficiency judgment against the defendants, Gore.

"And it further appearing to the court and the court does so find that in order to do equity and make a fair, just and equitable disposition of this said matter that the court in the exercise of its general equitable powers and in the performance of its duty as a chancellor should set and fix an upset price upon said property, and that unless an amount equal to or in excess of said upset price be bid at any sale had upon execution issued upon such said judgment and decree, that such bid should be rejected and the sheriff should not make any sale of the property, that any sale at any less figure should not be confirmed, and the same should be set aside, rendered nugatory and held void in all things."

■ We think there was sufficient evidence before the court to justify it in finding that the value of the mortgaged premises exceeded in a considerable sum the amount of the bids and that, because of the depression, there had been no competition in the bidding. There was no showing, however, of fraud or misconduct upon the part of the officer making the sale or of the plaintiff or any other person connected with the transaction, and no irregularity in the proceedings other than the inadequacy of the price bid and a lack of market caused by the economic depression existing at the time. It is obvious that the court, in directing a resale, followed the doctrine announced in *Teachers' Retirement Fund Assn. v. Pirie*, 150 Or. 435 (46 P. (2d) 105), and it is upon this ground alone that the order of the court, directing a resale, can be affirmed. We think, however, that the doctrine announced in that case, while properly applied in the instant case, ought not to be applied except in an extreme case and in one which comes fairly within the reasoning of that decision.

In support of its contention that the sales should have been confirmed, the plaintiff argues that immediately upon the withdrawal by the trustee in bankruptcy of his objections to confirmation, the court should have confirmed the sales because, under the bankruptcy act, the equity of redemption in the mortgaged property had passed to the trustee and the remaining objectors, the Gores, had no further interest in the property or right to object.

■ We think that this objection is not well taken. Although, under the bankruptcy act, a trustee in bankruptcy becomes vested by operation of law with all the assets of the bankrupt except such as are exempt, yet he takes the property subject to all claims, liens

and equities existing in favor of third persons and, where any part of such property is worthless or unprofitable or likely to become a burden rather than a benefit to the estate, the trustee has a right to elect whether he shall accept and administer such property or not, and, so it has uniformly been held that, if the trustee finds the property of the bankrupt so heavily burdened with mortgages or other liens that he considers it impossible to realize anything out of the equity of redemption for the benefit of the general creditors, he may refuse to administer it and abandon it to the secured creditors and it is his duty to do so whenever it is certain that the general estate would derive no benefit from a sale of the property: *McCarty v. Light,* 139 N. Y. S. 853 (155 App. Div. 36); *Dow v. Bradley,* 110 Me. 249 (85 Atl. 896, 44 L. R. A. (N. S.) 1041); *In re North Star Ice & Coal Co.,* (Tenn.) 252 F. 301; *In re Jersey Island Packing Co.,* (Cal.) 138 F. 625 (2 L. R. A. (N. S.) 560). When the trustee in the instant case withdrew his objections to the confirmation, this amounted to a definite declaration upon his part that he refused to administer the mortgaged property and had elected to abandon any further claim to the property. The title, therefore, remained in the bankrupts and they thereupon became the real parties in interest and the proper persons to object to confirmation of the sales: *Dow v. Bradley,* supra. That the action of the trustee amounted to a complete abandonment of the mortgaged lands is clearly established by the record. The reason for the trustee's action in abandoning the property is obvious from the fact that, in addition to the lien of plaintiff's mortgages and the unpaid taxes, there was also a valid and outstanding judgment lien of $15,-612.55 and accrued interest thereon in favor of one D.

H. McLeod. For these reasons we think it was proper, upon the showing made, for the trial court to vacate these sales and order the property to be resold.

██ We think, however, that the court had no authority to fix a minimum or upset price for which the property must be resold, nor to refuse to permit the plaintiff to have and retain possession of the property pending its resale. In considering the first of these questions, it must be borne in mind that these were sheriff's or execution sales and controlled wholly by statute, and not sales made by a receiver or other officer acting wholly under the directions of the court. There was no authority, therefore, for the exercise by the court, in respect to these statutory proceedings, of any of the powers inherent in a court of equity since every step in the proceeding was controlled by section 3-409 of the Code and nothing contained therein authorized the court to direct any specific price as the minimum for which the property could be sold, and that the order as made by the court was not only a violation of the statute but an invasion of the constitutional rights of the plaintiff.

"Courts of equity cannot any more disregard statutory and constitutional requirements and provisions than can courts of law."

*Hedges v. Dixon County,* 150 U. S. 182 (37 L. Ed. 1044, 14 S. Ct. 71).

Again, as said by the same court in *Magniac v. Thomson,* 56 U. S. 281 (14 L. Ed. 696):

"Wherever the rights or the situation of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim equitas sequitur legem is strictly applicable."

See also *Bronson v. Kinzie,* 42 U. S. (1 How.) 311 (11 L. Ed. 143) ; *McCracken v. Hayward,* 43 U. S. (2 How.) 608 (11 L. Ed. 397) ; *Barnitz v. Beverly,* 163 U. S. 118-125 (16 S. Ct. 1042, 41 L. Ed. 93) ; *Bennett v. Superior Court,* 5 Cal. App. (2d) 13 (42 Pac. (2d) 80) ; *Adams v. Spillyards,* 187 Ark. 641 (61 S. W. (2d) 686, 86 A. L. R. 1493) ; *Mellen v. Edwards,* 179 Wash. 272 (37 P. (2d) 203) ; *Bleakley v. Oakwayne Farms Co.,* 265 Mich. 268 (251 N. W. 354) ; *Michigan Trust Company v. Cody,* 264 Mich. 258 (249 N. W. 844) ; *Kenly v. Huntington Building Assn.,* 166 Md. 182 (170 Atl. 526, 90 A. L. R. 1321) ; *Langever v. Miller,* 124 Tex. 80 (76 S. W. (2d) 1025, 96 A. L. R. 836) ; *Vanderbilt v. Brunton Piano Co.,* 111 N. J. Law 596 (169 Atl. 177, 89 A. L. R. 1080). Neither at the time these mortgages were executed nor at the time the orders complained of were made was there any statute in this state authorizing the court to fix a minimum or upset price for a sale upon an execution issued to enforce a foreclosure decree and, if such a provision had been enacted by the legislature subsequently to the giving of the mortgages, it would, as to these mortgages, be unconstitutional because impairing the obligation of a contract in violation of the federal constitution : See *Bronson v. Kinzie,* supra, and *McCracken v. Hayward,* supra. What the legislature could not constitutionally do could not be done by any other department of the state government.

Section 3-409, subd. 4, Oregon Code 1930, provides that, in the event a sale of real property is not confirmed, ''upon a resale, the bid of the purchaser at the former sale shall be deemed to be renewed and continue in force, and no bid shall be taken except for a greater amount''. Section 3-510, Oregon Code 1930, provides :

"The purchaser from the day of sale, until a resale, or a redemption, and a redemptioner from the day of his redemption until another redemption, shall be entitled to the possession of the property purchased or redeemed, unless the same be in the possession of a tenant holding under an unexpired lease, and in such case, shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof during the same period."

In *Cartwright v. Savage,* 5 Or. 397, 399, this court, after quoting the statute last referred to, said:

"It is clear that Savage [purchaser at foreclosure sale] was entitled to the possession of the property, for it was not in the possession of a tenant holding under an unexpired lease. By virtue of this right of possession, a purchaser at a judicial sale may enter and use and occupy the premises, and thereby preserve the premises intact, and better prevent waste and destruction."

Again, in *Eldridge v. Hoefer,* 45 Or. 239, 243 (77 P. 874), the court said:

"Under our statute a purchaser of real property at execution sale is entitled to possession thereof from the day of sale until a resale or redemption, unless it is in possession of a tenant holding under an unexpired lease."

See also *Pillsbury v. McGarry,* 69 Or. 261 (138 P. 836), and *Fields v. Crowley,* 71 Or. 141 (142 P. 360).

For these reasons, the orders or decrees appealed from will be modified. That part of the orders directing a resale of the mortgaged properties will be affirmed. In so far as these orders fix a minimum price at resale and deny plaintiff the possession of the property pending a resale thereof, they will be set aside and reversed.

CAMPBELL, C. J., and BEAN and BAILEY, JJ., concur.