NOURSE, J., pro tem.
Defendants have appealed from a judgment in favor of plaintiffs setting aside a sheriff’s sale of shares of Consumers Salt Company.
Plaintiffs V. E. Stockwell and B. C. Stockwell are husband and wife. Defendants Irwin and Rose are attorneys for defendant McAlvay. On June 18, 1925, McAlvay obtained a judgment, hereinafter referred to as the fraud judgment, against V. E. Stockwell in the sum of $16,000 based upon the fraud of the latter in the sale of real estate to Mc-Alvay. Prior to the entry of this judgment, but subsequent to the accrual of the cause of action therein and after a threat of suit had been made, Y. E. Stockwell conveyed his resi *371 dence property to his wife, B. C. Stockwell, by deed of gift. In a separate action, a judgment was rendered on April 13, 1926, in which it was determined that this deed was “executed by said V. B. Stockwell with intent to delay and defraud his said creditor, said B. G. McAlvay’’. It was further determined that the title to the property was vested in the trustee in bankruptcy of V. B. Stockwell. Execution was issued on the fraud judgment, and on October 1, 1925, the sheriff levied upon 225,000 shares of stock of Consumers Salt Company, shown by the records of the company to be in the name of B. C. Stockwell. Consumers Salt Company made and delivered to the sheriff an answer in writing, signed by V. E. Stockwell as president and J. R. Riggins as secretary, to the effect that V. E. Stockwell did not own any interest in the shares so levied upon. The trial court found that on July 9, 1925, the shares were the property of V. E. Stock-well and that on that date he caused them to be transferred to B. C. Stockwell. The shares were sold by the sheriff to McAlvay on November 17, 1925, for the sum of $50.
No charge is made that the sale was not made in accordance with law. Between the date of the levy and the date of the sale, certain negotiations occurred between Attorney Rose for McAlvay and Attorney Newby for V. E. Stockwell. On October 22, 1925, V. E. Stockwell verified a petition to be filed in bankruptcy proceedings and appended thereto a list of his property, except the residence property and the 225,-000 shares levied upon. This petition was exhibited b3 Newby to Rose on October 28, 1925, with the assertion that V. E. Stockwell had stated that the list included all his property. Rose was informed that V. E. Stockwell did not wish to commence bankruptcy proceedings, but would do so unless the property listed was accepted by McAlvay in satisfaction of his judgment. Rose undertook to investigate the property listed and being satisfied that said property was of no value, ordered the sale to proceed. The day after the sale, the petition in bankruptcy was filed. On November 19, 1925, V. E. Stockwell was adjudged bankrupt, and on December 17, 1925, a trustee was appointed.
On November 27,1925, McAlvay commenced an action against Consumers Salt Co. and B. C. Stockwell under provisions of section 328 of the Civil Code, as it was then in force. Y. E. Stockwell is not bound by this judgment. He was not a party to the action and filed no pleading therein. *372 While he appeared as a witness and testified in behalf of B. C. Stockwell, this alone is not enough to make the judgment binding upon him. On the first trial of this action, judgment was rendered against McAlvay, but his motion for new trial was granted. Upon the second trial, it was adjudged that B. 0. Stockwell had no interest in the shares and that they were the property of McAlvay. This judgment was affirmed on appeal. (McAlvay v. Consumers Salt Co., 112 Cal. App. 383 [297 Pac. 135].) In that action B. C. Stockwell filed a cross-complaint in which Rose and Irwin were made defendants and in which she alleged the fraud committed by appellants in the execution sale and sought to have the sale set aside. Appellants demurred to the cross-complaint and made a motion to strike parts of it. This motion was granted to such an extent that the question of fraud was eliminated. Since appellants prevented respondent’s attempt to have the present issues tried therein, appellants cannot now assert that the former action is a bar to this action. (Corona Investment Co. v. Riedman, 11 Cal. App. (2d) 648 [54 Pac. (2d) 85]; United Bank & Trust Co. v. Hunt, 1 Cal. (2d) 340 [34 Pac. (2d) 1001].)
The trial court found in substance that appellants Rose and Irwin falsely represented to Newby that they were investigating the value of the property listed in the bankruptcy petition; that appellants Rose and Irwin pretended to be negotiating a settlement for the purpose and with the intention of preventing V. E. Stockwell from filing his petition in bankruptcy until they could cause the shares of Consumers Salt Company to be sold; that by reason of their representation Newby was lulled into security and failed to file said petition in bankruptcy and to take action to prevent the sale; that the sale was made without any actual notice to Newby or Y. E. Stockwell; and that the reasonable value of the shares sold was $60,000. The evidence supports these findings and the judgment based thereon.
It is argued by appellants that McAlvay is not bound by the acts of his attorneys Rose and Irwin. However, it is clear that except for the fraud of Rose and Irwin the sheriff’s sale of the shares could have been prevented. Mc-Alvay received the shares so obtained and retained them after he had notice of the fraud. Under these circumstances, he cannot contend that he is not bound by the fraud of *373 Rose and Irwin. (A. L. I., Restatement of the Law, Agency sec. 99 and cases cited in the California Annotations thereto.)
The evidence discloses that V. B. Stockwell attempted to place his property beyond the reach of his creditor Mc-Alvay. He conveyed the residence property to his wife. He caused the shares of Consumers Salt Company to be transferred to her. He verified a petition in bankruptcy in which he failed to list all his assets, and caused it to be offered to McAlvay with the veiled threat that if McAlvay did not accept the assets therein listed in satisfaction of the fraud judgment, he would cause the petition to be filed. Appellants argue that because V. E. Stockwell fraudulently attempted to prevent the satisfaction of the fraud judgment, the doctrine of clean hands applies, and respondents have no standing to seek relief against the fraud of McAlvay’s attorneys in attempting to obtain satisfaction of said judgment. However, this contention is without merit for two reasons. The trial court found that none of the acts above complained of were done with intent to defraud McAlvay and that appellants did not rely upon any of the declarations of V. E. Stockwell in which he disavowed ownership of the shares of Consumers Salt Company and were not misled by any of these transactions. There is a conflict in the evidence which, when considered with the presumption that private transactions have been fair and regular, amply supports these findings. (Code Civ. Proc., see. 1963, subd. 19.) The second and more persuasive reason is that appellants have not been injured by the acts complained of. Upon the execution sale, which respondents seek to set aside, Mc-Alvay purchased for $50 the shares herein involved. The trial court has found the reasonable value of these shares to be $60,000. On April 26, 1926, McAlvay presented to the trustee in bankruptcy of V. E. Stockwell his claim for the balance of the fraud judgment. In June, 1926, there was paid from the separate property of B. C. Stockwell the sum of $25,000 to the trustee in bankruptcy under a stipulation that the claims against Y. E. Stockwell should be paid in full and the assets held by the trustee transferred to B. C. Stockwell. This stipulation was performed. As a result of it, McAlvay’s claim was paid in full by the trustee in bankruptcy and the fraud judgment satisfied. Thus McAlvay has been paid in full and yet is seeking to retain shares worth $60,000 for which he paid only $50. Under these *374 circumstances McAlvay has not been injured by the fraud of Y. E. Stockwell and V. E. Stockwell has been purged of his fraud. It follows that the doctrine of clean hands has no application in this. case. (McNair v. Benson, 63 Or. 66 [126 Pac. 20]; 4 A. L. R, pp. 44, 59; 21 C. J., p. 187, sec. 172.)
Appellants contend that the title to the shares vested in the trustee in bankruptcy of V. E. Stockwell, and therefore respondents have no interest in the shares sufficient to support this action. It is true that V. E. Stockwell did not list the shares as an asset with the trustee in bankruptcy. Where the bankrupt conceals or fails to list an asset with the trustee in bankruptcy, the bankrupt cannot, even after discharge, assert any right to the asset so concealed against a creditor of the bankrupt. (First Nat. Bank v. Lasater, 196 U. S. 115 [25 Sup. Ct. 206, 49 L. Ed. 408].) But if the bankrupt presents the asset to the trustee in bankruptcy and the trustee abandons or rejects the asset, the bankrupt may assert his rights in said asset against his creditors. (In re Webb, 54 Fed. (2d) 1065; In re Frazin, 183 Fed. 28 [33 L. R A. (N. S.) 745]; Dow v. Bradley, 110 Me. 249 [85 Atl. 896; 44 L. R A. (N. S.) 1041].) In this case the trial court found that in April, 1926, the respondents demanded of the trustee in bankruptcy of V. E. Stockwell that he assume the title of the shares of Consumers Salt Company, and that he refused to do so. The court further found that the trustee in bankruptcy rejected any right to any cause of action pertaining to said shares. The evidence discloses that respondents filed with the trustee in bankruptcy a petition for an order directing McAlvay to surrender the shares to the trustee in bankruptcy as an asset of V. E. Stockwell. In the petition, the facts surrounding the execution sale were alleged. The order sought was made, but the Federal District Court made its order canceling and annulling this order. Under these facts, the findings of the trial court are amply supported, and, since the trustee rejected the right to sue to set aside the execution sale and disclaimed any interest in the shares after full disclosure by the bankrupt, no title to the shares ever vested in the trustee in bankruptcy of V. E. Stockwell.
The original complaint in this action was filed on October 27, 1926. Nothing was done in the action until June *375 of 1932. On June 3, 1932, and again on June 7, 1932, amendments to the complaint were filed, the latter amendment being the first in Avhich there was an allegation that V. B. StockAvell had any interest in the shares. Trial was commenced on June 6, 1932. Appellants argue that the amendment of June 7, 1932, does not relate back to the time of filing of the original complaint because the last amendment changed the status of the plaintiff V. E. Stockwell, and therefore the action was barred by the statute of limitations. It must be noted that there was no change in the cause of action by the last amendment. It remained an action to set aside the sheriff’s sale for fraud. It must be further emphasized that no substitution of a party is involved. At all times V. B. Stockwell was a party to this action and the sole effect of the amendment was to add a specific allegation that he had an interest in the shares. As Avas said in Doolittle v. McConnell, 178 Cal. 697, 701 [174 Pac. 305] : “Where there is no attempt to state a new cause of action in an amended complaint, but merely the addition of matters essential to make the original cause of action complete, the amendment, though made after the expiration of the period of limitation, relates back to the time of the commencement of the action.” There has been no change in the relief sought, and the situation presented in the original complaint does not differ essentially from that pleaded in the amended complaint. The mere fact that a new cause of action is pleaded does not prevent the relation back of the amendment to the time of the original complaint. (Cowell v. Snyder, 171 Cal. 291, 294 [152 Pac. 920].) It is only where the plaintiff seeks by amendment to recover upon a set of facts entirely unrelated to those pleaded in the original complaint.
Appellants make the further contention that respondents are barred by laches. In making this contention, it is apparent that appellants are not using the term laches in a technical sense, because it is clear that this action was commenced promptly after the sale. Appellants’ argument seems to be that because of the delay of six years prior to the amendment, respondents should be barred. However, in view of the practically continuous litigation between the parties and the fact that no evidence was taken before the amendment was made, no abuse of discretion by the trial *376 court appears in the allowance of the amendment. (Mackroth v. Sladky, 27 Cal. App. 112 [148 Pac. 978].)
Part of the shares sold at the sheriff’s sale were transferred by MeAlvay to Irwin who in turn pledged the stock as security with one Henry Merton. The court adjudged that certificate No. 53 for 112,500 shares issued to and held by Henry Merton “be declared null and void” and Merton was commanded to deliver the certificate to the clerk of the court. Merton was not a party to the action and his rights as an innocent holder for value could not properly be adjudicated. Therefore, appellants argue that the judgment must be reversed. But Merton is in no way bound by this judgment, and therefore appellants, standing in the position of a pledgor gratuitously protecting his pledgee’s title, have no standing to object to this portion of the judgment.
For the reasons above given the judgment is affirmed.
Curtis, J., Seawell, J., Edmonds, J., Langdon, J., Waste, CL J., and Shenk, J., concurred.
Rehearing denied.